504 A.2d 896

David G. MARAVICH and Donna M. Maravich, his wife, Appellants,

v.

AETNA LIFE AND CASUALTY COMPANY, a corporation, and the Standard Fire Insurance Company, a corporation, Appellees.

David G. MARAVICH and Donna M. Maravich, his wife, Appellees,

v.

AETNA LIFE AND CASUALTY COMPANY, a corporation, and the Standard Fire Insurance Company, Appellants.

Superior Court of Pennsylvania.

Argued May 15, 1985.

Filed Jan. 24, 1986.

Gerard J.A. Cipriani, Pittsburgh, for Maravich, appellants in No. 1332 and appellees in No. 1345.

Paul K. Geer, Pittsburgh, for Aetna Life, appellants in No. 1345 and appellees in No. 1332.

Before SPAETH, President Judge, and ROWLEY and WIEAND, JJ.

WIEAND, Judge:

David G. Maravich and Donna M. Maravich, husband and wife, owned a residence in Baldwin Borough, Allegheny County, as tenants by the entireties. On February 19, 1982, the dwelling and its contents were damaged by fire. In a civil action to recover on a fire insurance policy issued by Aetna Life and Casualty Co. (Aetna), the jury found that the fire had been set intentionally by David Maravich. A verdict was returned in favor of Aetna. In response to post-trial motions, the trial court upheld the jury's finding but, having determined that there was no evidence to show

Donna Maravich's complicity in the setting of the fire, entered judgment n.o.v. in favor of Donna Maravich for one-half of the loss, i.e., $31,550.00. All parties have appealed.

## I.  *The Evidence*

■ On the evening of February 18, 1982, according to the evidence, David Maravich took his wife and two children to the home of his wife's mother as a precaution in response to threats allegedly made by union steelworkers who had been angered by Maravich's enforcement of safety regulations in his capacity as safety foreman. Maravich returned later to his own home where, according to his testimony, he locked the doors, retired to his second floor bedroom and fell asleep. He was awakened, he said, by two men who had broken into the home. While one of the men tied him to the bed with belts, the other poured gasoline around the bed and throughout the second floor of the home. He also testified that he heard noises on the first floor which suggested the presence of a third person.

When the men left, Maravich's story continues, he observed flames in the hallway. He was then able to free his hands from the headboard where they had been tied, and he also untied the leg restraints. While attempting to slip into his shoes he said that he had slipped and fallen on the gasoline soaked rug. This was contradicted by evidence that a test made of his clothing disclosed not even a trace of gasoline. In any event, Maravich testified that he had then opened the bedroom window and escaped by jumping out the window and onto an awning several feet below.

Police and fire personnel arrived, the fire was extinguished, and an investigation was begun. The investigation turned up a partially used pack of matches on the awning beneath the bedroom window and a detached match in the bedroom. This match, the testimony showed, was consistent with and could have come from the matchbook found on the awning. Police investigation also disclosed no evidence of any forced entry into the Maravich home. Edward Joyce, an assistant fire marshall who had headed the fire

department's investigation, testified as an expert witness. He said that the fire had been of incendiary origin, that gasoline had been used as an accelerant, and that the fire had started in a corner of the bedroom only a few feet from the bed to which Maravich, according to his testimony, had been tied. He testified, as did another expert, that because of the large amount of gasoline which had been used, the spread of the fire would have been swift, almost in the nature of a "flash fire." He also testified that investigation disclosed that the "petcock" valve, which controlled the flow of gas into the furnace and hot water heater, had been turned off. The closing of this valve, located so as not to be readily observable by one who was unfamiliar with the home, most likely prevented an explosion after the fire had started. The full significance of this fact, he said, was to be measured in light of his conclusion that in the middle of February it would have been unusual to have neither heat nor hot water in the Maravich home. There was also evidence of statements made by Maravich that he had sustained large gambling losses and was in debt because of them.

"In reviewing a denial of a motion for judgment n.o.v., the evidence and all reasonable inferences therefrom must be considered in the light most favorable to the verdict winner. A judgment n.o.v. should be entered only in clear cases, and all doubt should be resolved in favor of the verdict winner. A motion for judgment n.o.v. can properly be granted only 'when no two reasonable minds could differ that, as a matter of law, the party has failed to make out his case.'" *Kearns v. Clark,* 343 Pa.Super. 30, 34–35, 493 A.2d 1358, 1360 (1985), quoting *Aiello v. Ed Saxe Real Estate Inc.,* 327 Pa.Super. 429, 433, 476 A.2d 27, 29 (1984) (citations omitted).

Aetna had the burden of proving by a fair preponderance of the evidence that its insured had been responsible for the fire damage to the property. *Greenberg v. Aetna Insurance Co.,* 427 Pa. 494, 496, 235 A.2d 582, 583 (1967); *Giambra v. Aetna Casualty & Surety Co.,* 315 Pa.Super.

231, 233, 461 A.2d 1256, 1257 (1983). However, it was not necessary to prove arson by direct evidence. *Giambra v. Aetna Casualty & Surety Co., supra,* 315 Pa.Superior Ct. at 233, 461 A.2d at 1257; *Ruttenberg v. Fire Insurance Co.,* 122 Pa.Super. 363, 365, 186 A. 194, 195 (1936). It was necessary only that there be evidence from which the fact finder could infer legitimately that the insured had burned or caused to be burned his own property. Although proof of motive was not essential, the existence of a motive was relevant and was a part of the circumstantial evidence to be considered by the jury. *Giambra v. Aetna Casualty & Surety Co., supra,* 315 Pa.Super. at 234, 461 A.2d at 1257.

In the instant case, the evidence, even though largely circumstantial, was sufficient to support the jury's finding that Maravich had set fire to his own dwelling. He poured gasoline throughout the house, ignited the fire by the use of matches while near the window in the master bedroom, escaped through the same window, lost the pack of matches, and intended to use the insurance proceeds to pay gambling debts. At least a jury could have found these facts from the evidence.

## II. *The Motion for New Trial*

Aetna called two witnesses who testified that Maravich had told them that he had gambled for high stakes and had lost. Maravich contends that this testimony was irrelevant and prejudicial. We disagree.

■ Evidence is relevant if it tends to make a fact in issue more or less probable. *Morris v. Soblotney,* 502 Pa. 418, 422, 466 A.2d 1022, 1024 (1983). "Thus, where it is disputed whether a person has done a certain act, evidence is admissible ... to show the existence of a motive on his part to do it." 31A C.J.S. *Evidence* § 178 (1964). In the instant case, the testimony of co-employees that Maravich had gambled and lost large sums of money was relevant to show a motive for setting fire to his insured dwelling. The trial court did not err in allowing it.

■ Detective Richard Connell, who had investigated the fire, was asked on direct examination if anything regarding Maravich's version of the fire appeared "suspicious" in view of the facts which he had found at the scene of the fire. Maravich objected on grounds that the information would be irrelevant and because the witness had not been qualified as an expert. Although the use of the word "suspicious" was improvident, there was no specific objection to its use, and the testimony elicited by the question was proper. In response, the witness testified to *facts* observed at the scene of the fire, some of which were either contrary to or did not support the Maravich version of the manner in which the fire had started. Thus, the witness testified that after the fire, Maravich's belts were found hanging in a closet and, in any event, were of insufficient length to permit Maravich to be tied in the manner which he had described. He also expressed an inability to understand how a third person could have soaked the bedroom with gasoline, as Maravich testified, and then put a match to it while standing in the interior of the room. When Connell expressed an opinion that Maravich could not have been tied to the bed in the manner which he had described, however, the court sustained an objection and instructed the jury to disregard the witness' belief. The trial court carefully monitored the examination of this witness, and the record does not disclose any abuse of discretion. If the initial question was inartfully drawn to elicit "suspicious" circumstances, the record suggests that Maravich was not unfairly prejudiced by the answers given.

■ Maravich also contends that it was error to allow Connell to testify that the deputy fire marshall had told him that the fire started in the master bedroom. He is correct that this was hearsay. It was in-court testimony of an extrajudicial statement offered to prove the origin of the fire. See: *Kemp v. Qualls*, 326 Pa.Super. 319, 327, 473 A.2d 1369, 1373 (1984). The error, however, was harmless. The deputy fire marshall later testified to the same point of origin and was subjected to cross-examination regarding his

testimony. The earlier receipt of his opinion in the form of a hearsay statement, therefore, did not require a new trial.[1]

■ Edward Joyce, the deputy fire marshall, testified concerning his observations at the scene of the fire. He was also asked as an expert witness to state his opinion regarding the origin of the fire. He said that the fire had been deliberately set, that gasoline had been spread around the bedroom, the hall, the stairway and other portions of the home as an accelerant, and that gasoline had been used in such quantities that if a person had been tied to the bed at the time the fire was started, he could not have escaped without being burned. He also testified that the valve controlling the flow of gas to the furnace and hot water heater was in a closed or off position, and expressed the opinion that the valve had been closed by the person who set the fire in order to prevent an explosion. He said that in order to confirm this opinion, he inquired of all fire personnel who had been engaged in fighting the fire and learned that none of them had touched the petcock valve. Maravich argues that this was hearsay evidence which should not have been allowed.

In *Commonwealth v. Thomas*, 444 Pa. 436, 282 A.2d 693 (1971), the Supreme Court adopted an exception to the hearsay rule which "permitted medical witnesses to express opinion testimony on medical matters based, in part, upon reports of others which are not in evidence, but which the expert customarily relies upon in the practice of his profession." *Id.*, 444 Pa. at 445, 282 A.2d at 698. In *Commonwealth v. Daniels*, 480 Pa. 340, 390 A.2d 172 (1978), the Court rejected a "contention that the rule in *Thomas* is necessarily limited to observations of other persons within the medical profession." *Id.*, 480 Pa. at 349–350 n. 7, 390 A.2d at 176–177 n. 7. In rejecting this contention, the

1. During cross-examination of Connell, counsel interrupted an answer and was admonished to allow the witness to complete his answer. This exchange, as Maravich concedes, was "innocuous." Maravich Brief at p. 40. It was neither prejudicial nor supportive of the motion for new trial.

Supreme Court relied in part upon Fed.R.Evid. 703, which provides that "[t]he facts or data ... upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." Also relying upon this rule of evidence, the Superior Court held in *Steinhauer v. Wilson*, 336 Pa.Super. 155, 485 A.2d 477 (1984), that a construction expert could base a cost estimate upon figures provided by various contractors with whom he had consulted. *Id.*, 336 Pa.Superior Ct. at 158, 485 A.2d at 479.

With respect to this exception to the hearsay rule, McCormick has said:

An expert witness may ... base an opinion on facts or data that are not "admissible in evidence" if of a type reasonably relied upon by experts in the field. An expert must, of course, be allowed to disclose to the trier of fact the basis facts for his opinion, as otherwise the opinion is left unsupported in midair with little if any means for evaluating its correctness. This raises the apparent anomaly that the expert may testify to evidence even though it is inadmissible. The anomaly disappears, however, when the language of the rule is given its proper meaning that the expert himself may give the necessary foundation testimony for the introduction of basis testimony that traditionally would have been inadmissible without producing numerous other witnesses. It does not mean that the expert becomes the sole judge of the admissibility of the basis facts: they must still be of a type reasonably relied upon by experts in the field, and they are subject to such general evidentiary principles as exclusion for prejudice or irrelevancy. Subject to the foregoing comments, the basis facts may be testified to by the expert, and accordingly they are in evidence. The effect of [the rule] has been to create a hearsay excep-

tion, or perhaps dispense with the requirement of first-hand knowledge, as the case may be.

McCormick on Evidence § 324.2 (3d ed. 1984).

In *American Universal Insurance Co. v. Falzone*, 644 F.2d 65 (1st Cir.1981), the exception was applied under circumstances which were similar factually to those in the instant case. There, the insured had made a claim for a fire loss from his insurance company. The insurer, in turn, brought an action for a declaratory judgment, contending that it was not liable because the fire had been intentionally set by its insured. At trial, the insurance company produced the state fire marshall to testify that the fire had been of human origin. The insured moved to strike the opinion testimony of the fire marshall on the ground that part of his opinion had been based on information obtained from other fire marshalls on the inspection team. The Court held, per curiam, that the trial court's refusal to strike the fire marshall's opinion testimony was fully justified under federal rules of evidence. *Id.* at 66. The Court stated:

> [S]ince it is reasonable for one state fire marshall to rely on the contemporaneous and on-the-scene opinions of other investigators on his team as to the portion of the investigation that they carried out within their competence, Ricker's [the fire marshall's] testimony was properly admitted.

*Id.* Accord: *Garrett v. Standard Fire Insurance Co.*, 541 S.W.2d 635, 637 (Tex.Civ.App.1976) (allowing opinion testimony of fire investigator who had talked with firefighters who were present when the building was burning).

In the instant case, it was reasonable for Deputy Fire Marshall Joyce to rely upon information supplied by firemen under his supervision to the effect that none of the firemen had shut off the petcock valve. Because such reports are the type of information which a fire investigator would ordinarily rely upon in determining the cause of a fire, Joyce's opinion testimony, though founded in part upon the hearsay declarations of the firemen, was clearly admissible. The trial court did not err by allowing testimony of

the facts upon which he relied even though those facts traditionally would not have been admissible without producing numerous other witnesses.

■ Finally, Maravich complains that Carl J. Natale, a fire investigator, was permitted to express an opinion regarding the point of origin of the fire even though his written report had pertained only to the incendiary origin of the fire and the nature of the accelerant used. The allowable scope of the witness' testimony, in view of his prior report, was clearly vested in the discretion of the trial court. Our review discloses no abuse of that discretion.

### III. *The defamation claim*

■ The complaint contained a claim that David and Donna Maravich had been libeled by Aetna's letter denying their claim. At trial, they apparently abandoned this claim, for they offered no evidence concerning the same. Instead, they attempted to show that they had been defamed by questions asked and statements made to their neighbors by claims representatives investigating the fire. The trial court refused to allow this testimony, denied a requested amendment of the complaint, and refused to submit the defamation claim to the jury. We find no error in the trial court's handling of this aspect of the action. Moreover and in any event, the issue is now moot. The jury's finding that Maravich intentionally set the fire would be a complete defense to the claim that he was defamed by accusations thereof made by representatives of his insurance company. See: *Hepps v. Philadelphia Newspapers, Inc.*, 506 Pa. 304, 313, 485 A.2d 374, 379 (1984); *Corabi v. Curtis Publishing Co.*, 441 Pa. 432, 449, 273 A.2d 899, 908 (1971); *Dunlap v. Philadelphia Newspapers, Inc.*, 301 Pa.Super. 475, 485–486, 448 A.2d 6, 11 (1982).

### IV. *The judgment n.o.v. in favor of Donna Maravich*

■ Upon completion of the evidence and before the case went to the jury, a motion for directed verdict was made on behalf of Donna Maravich. In support thereof, it was

argued that the insurer had failed to offer evidence of her complicity in the setting of the fire. The trial court denied the motion and instructed the jury that there could be no recovery by either party if David Maravich had intentionally set the fire. In response to a post-trial motion, however, the trial court determined that there had been no evidence of Donna Maravich's complicity and entered judgment n.o.v. in favor of Donna Maravich for one-half of the fire loss. Aetna appealed from the entry of this judgment n.o.v.

This is a difficult issue. It is particularly difficult because Donna and David Maravich continue to reside together as husband and wife. Aetna argues that David will have access to any recovery awarded to his wife and, therefore, will benefit from his wrongful act in violation of public policy.

As a general rule, whether an innocent co-insured will be allowed to recover on a fire insurance policy after another co-insured has intentionally burned the insured property depends on whether the interests of the co-insureds are joint or severable. See: Annot., *Right of Innocent Insured to Recover Under Fire Policy Covering Property Intentionally Burned by Another Insured,* 11 A.L.R.4th 1229 (1982). A majority of the courts, but not all, have made this determination, i.e., whether the interests of co-insureds are joint or severable, by examining the terms of the contract of insurance to determine the nature of the coverage provided. See: *Spezialetti v. Pacific Employers Insurance Co.,* 759 F.2d 1139 (3d Cir.1985); *Bryant v. Allstate Insurance Co.,* 592 F.Supp. 39 (D.Ky.1984); *Commercial Union Insurance Co. v. State Farm Fire and Casualty Insurance Co.,* 546 F.Supp. 543 (D.Colo.1982); *Opat v. State Farm Fire and Casualty Insurance Co.,* 542 F.Supp. 1321 (W.D. Pa.1982); *Hosey v. Seibels Bruce Group,* 363 So.2d 751 (Ala.1978); *Steigler v. Insurance Co. of North America,* 384 A.2d 398 (Del.1978); *Auto-Owners Insurance Co. v. Eddinger,* 366 So.2d 123 (Fla.Dist.Ct.App.1979); *Richards v. Hanover Insurance Co.,* 250 Ga. 613, 299 S.E.2d 561 (1983); *Economy Fire and Casualty Co. v. Warren,* 71

Ill.App.3d 625, 28 Ill.Dec. 194, 390 N.E.2d 361 (1979); *Fuston v. National Mutual Insurance Co.*, 440 N.E.2d 751 (Ind.App., 1982); *Hildebrand v. Holyoke Mutual Fire Insurance Co.*, 386 A.2d 329 (Me.1978); *St. Paul Fire and Marine Insurance Co. v. Molloy*, 291 Md. 139, 433 A.2d 1135 (1981); *Morgan v. Cincinnati Insurance Co.*, 411 Mich. 267, 307 N.W.2d 53 (1981), *reversing*, 91 Mich.App. 48, 282 N.W.2d 829 (1979); *Krupp v. Aetna Life & Casualty Co.*, 103 A.D.2d 252, 479 N.Y.S.2d 992 (1984); *Winter v. Aetna Casualty & Surety Co.*, 96 Misc.2d 497, 409 N.Y. S.2d 85 (Supreme Court, Nassau Co. 1978); *Lovell v. Rowan Mutual Fire Insurance Co.*, 302 N.C. 150, 274 S.E.2d 170 (1981); *McCracken v. Government Employees Insurance Co.*, 284 S.C. 66, 325 S.E.2d 62 (1985); *Ryan v. MFA Mutual Insurance Co.*, 610 S.W.2d 428 (Tenn.Ct.App.1980); *Hedtcke v. Sentry Insurance Co.*, 109 Wis.2d 461, 326 N.W.2d 727 (1982).

Other courts have held that where a dwelling is owned jointly by husband and wife, their insurance interest, i.e., the right to receive insurance proceeds upon destruction of the property, is necessarily joint and indivisible. See: *Fuselier v. United States Fidelity and Guaranty Co.*, 301 So.2d 681 (La.App.1974); *Kosior v. Continental Insurance Co.*, 299 Mass. 601, 13 N.E.2d 423 (1938); *Short v. Oklahoma Farmers Union Insurance Co.*, 619 P.2d 588, 11 A.L.R.4th 1217 (Okla.1980); *Cooperative Fire Insurance Association of Vermont v. Domina*, 137 Vt. 3, 399 A.2d 502 (1979); *Rockingham v. Hummel*, 219 Va. 803, 250 S.E.2d 774 (1979); *Klemens v. Badger Mutual Insurance Co. of Milwaukee*, 8 Wis.2d 565, 99 N.W.2d 865 (1959), *overruled by*, *Hedtcke v. Sentry Insurance Co., supra.* Where spouses have owned property by the entireties, these courts have disallowed recovery of insurance proceeds by the innocent spouse because it would be impossible to separate the interest of the innocent spouse in view of the fact that each owned the whole and not merely part of the whole, see *Cooperative Fire Insurance Association of Vermont v. Domina, supra* 137 Vt. at 5, 399 A.2d at 503, and because

compensating the innocent spouse would destroy the "fictional oneness" of a tenancy by the entireties, see *Rockingham v. Hummel, supra* 219 Va. at 806–07, 250 S.E.2d at 776.

This unity of interest in property owned by the entireties is firmly established in the law of Pennsylvania. Thus, in *Werner v. Quality Service Oil Co.,* 337 Pa.Super. 264, 486 A.2d 1009 (1984), this Court, being asked to apply the Pennsylvania Comparative Negligence Law [2] to separate acts of contributory negligence by spouses owning property by the entireties, said:

> A tenancy by the entireties is an estate "per tout et non per my." *Maxwell v. Saylor,* 359 Pa. 94, 96, 58 A.2d 355, 356 (1948). "The incidents of such an estate are unity of interest, title, time and possession...." *Berhalter v. Berhalter,* 315 Pa. 225, 227, 173 A. 172, 173 (1934). Each spouse has title to the whole of the property and not to any share or divisible part thereof. *Zipperlein Estate,* 367 Pa. 622, 624, 80 A.2d 817, 818 (1951); *Gallagher Estate,* 352 Pa. 476, 478, 43 A.2d 132, 133 (1945). Where, as here, husband and wife are seeking to recover damages for destruction of property owned by the entireties, the claimant is, in effect, the tenancy by the entireties. Therefore, the negligent acts of the spouses must be combined for purposes of applying the Comparative Negligence Law.

*Id.,* 337 Pa.Superior Ct. at 270, 486 A.2d at 1012. Consistently with this analogy, the Court of Common Pleas of Washington County, in *Matyuf v. Phoenix Insurance Co.,* 27 D. & C.2d 351 (1933), denied the recovery of insurance proceeds by an innocent spouse whose husband, a co-tenant by the entireties, had burned the jointly owned home. The court said:

> When a policy insures joint owners, and contains a condition that the insurance shall not embrace damage resulting from a voluntary increase of hazard, or neglect to use reasonable means to preserve the property, com-

2. 42 Pa.C.S. § 7102.

mitted by "the insured," this condition manifestly is intended to apply to the joint tenants, as together constituting "the insured," and to impose upon them, by construction, or by implication, whichever expression may be preferred, a joint duty and obligation to observe good faith toward the insurer.

*Id.* at 361.

However, in *Bowers Co. v. London Assurance Corp.*, 90 Pa.Super. 121 (1926), a different analogy was used. There, a vehicle had been "sold" pursuant to a bailment lease. A policy of insurance had been issued in the names of the dealer and the purchaser "as their interests may appear." In an action by the dealer against the insurer for fire damages, the insurer offered to show that the vehicle had been fraudulently burned by the purchaser. The trial court rejected the offer because the interests in the vehicle were separable and it had not been alleged that the dealer had been aware of the fraudulent burning. The Superior Court reversed. Regardless of the respective interests of dealer and purchaser in the vehicle, the Court held, the contract of insurance was joint. An action on the policy was joint, therefore, and the fraudulent burning of the vehicle by one of the assureds would prevent recovery by either. This suggests, as a majority of jurisdictions have held, that it is not the respective interests in the insured property but the interests in the policy of insurance which determine the rights of a co-insured.

Similar reasoning was followed in *McDivitt v. Pymatuning Mutual Fire Insurance Co.*, 303 Pa.Super. 130, 449 A.2d 612 (1982). In that case, where a residence was owned by husband and wife as tenants by the entireties, the owners had separated and were living apart. Following separation, the wife purchased fire insurance on the home, paid the premiums and was named as insured in the policy. After the home had been destroyed by fire, the husband claimed a portion of the insurance proceeds. The insurance company interpleaded the two tenants by the entireties, and, following hearing, the trial court awarded the entire

proceeds to the wife. This Court affirmed. Judge Popovich, writing for a unanimous panel, said: "Property ownership ... is of minimal importance in determining entitlement to the proceeds of insurance, since the nature and extent of the various rights and obligations of the parties are governed by the terms of the insurance contract." *Id.,* 303 Pa.Superior Ct. at 135, 449 A.2d at 615. He quoted with approval from *Lovell v. Rowan Mutual Fire Insurance Co., supra,* 302 N.C. at 154–55, 274 S.E.2d at 173 as follows:

> The unity of person of husband and wife [expressed through the tenancy by the entirety] gives no clue to the relationship that ought properly to obtain between the owners of the proceeds of insurance. . . .

*McDivitt v. Pymatuning Mutual Fire Insurance Co., supra,* 303 Pa.Super. at 136, 449 A.2d at 615. It is the contract of insurance and the nature of the interests which have been created by the terms thereof which is determinative of the right of a co-insured to recover indemnity. This indemnity is provided for an insured according to the terms of the policy; it is not necessarily payable to all owners of the property.

Another Court, in a factual scenario similar to that in the instant case, said:

> [T]he legal fiction of the entireties' estate in real estate is designed for the protection of the spouses and the marriage. It was initially designed to prevent the individual creditors of either spouse from taking the marital home. The courts generally, and divorce courts in particular, find no difficulty in dividing an entireties estate. [It is] a perversion of this legal fiction, designed to protect the spouses' rights and marital property, to use it to destroy the property rights of an innocent spouse.

*American Economy Insurance Co. v. Liggett,* 426 N.E.2d 136, 140 (Ind.App., 1981).[3] And, in *Krupp v. Aetna Life & Casualty Co., supra,* a New York Court said:

**3.** Accord: 41 C.J.S. *Husband and Wife* § 34 (1944) ("tenancy by the entireties is a sui generis species of tenancy, and a convenient mode of

The more modern "dominant" rule focuses on the contract of insurance rather than the property rights of the parties thereto. Pursuant to this modern rule, the courts have generally looked to the language of the insurance policy and used traditional rules of contract construction to determine whether the rights of the insured are joint or severable, for example, construing the policy in the manner it would be comprehended by the reasonable man and interpreting ambiguous language in the contract most strongly against its insurer-author. Thus, given the reasonableness of the expectation of an insured that his individual interest would be covered by a policy naming him as insured without qualification, a homeowners' policy which nowhere specified whether the interests of a named insured husband and wife in property held by both as tenants by the entirety were joint or several, would be construed as covering the interests of each separately, and alleged arson by the husband would not defeat the wife's right to recover on her interest, namely one-half of the total damages.

*Id.* 103 A.D.2d at 258, 479 N.Y.S.2d at 997 (citations omitted).

This view was followed by the United States District Court for the Western District of Pennsylvania in *Opat v. State Farm Fire and Casualty Insurance Co., supra.* The court, by looking to the terms of the policy, determined that the interests of the co-insureds in entireties property had been insured separately and that, therefore, the fraud of one co-insured did not bar recovery by the other who was innocent of such fraud. In *Spezialetti v. Pacific Employers Insurance Co., supra,* (rehearing denied May 22, 1985), the Court of Appeals followed a similar line of reasoning. In that case, however, the Court found exclusionary language in the policy which excluded coverage in the event of a dishonest act by "any insured." The Court held, therefore, that an act of arson by one co-insured excluded

protecting a surviving spouse from inconvenient administration of the decedent's estate and from the other's improvident debts").

coverage and prevented recovery by an innocent, co-insured tenant by the entireties.

It is a cardinal principle of insurance law that a policy or contract of insurance is to be construed liberally in favor of the insured and strictly against the insurer. 44 C.J.S. *Insurance* § 297(c)(1). "[A]ny ambiguity in the language of insurance contracts must be resolved in favor of the insured and against the insurer." *Knauber v. Continental Insurance Companies*, 291 Pa.Super. 57, 59, 435 A.2d 217, 218 (1981). The named insured in the policy issued by Aetna was "David G. Maravich and Donna M. Maravich." The policy did not further define their interests in the policy. A substantial majority of those courts which have looked to the terms of the policy to determine the rights of co-insureds have held, under similar policy terms, that the rights of an innocent spouse are separate from those of a spouse who intentionally burned jointly owned property. See, e.g., *Commercial Union Insurance Co. v. State Farm Fire and Casualty Insurance Co., supra; Opat v. State Farm Fire and Casualty Co., supra; Hosey v. Seibels Bruce Group, supra; Steigler v. Insurance Co. of North America, supra; Auto-Owners Insurance Co. v. Eddinger, supra; Richards v. Hanover Insurance Co., supra; Economy Fire and Casualty Co. v. Warren, supra; Fuston v. National Mutual Insurance Co., supra; Hildebrand v. Holyoke Mutual Fire Insurance Co., supra; St. Paul Fire and Marine Insurance Co. v. Molloy, supra; Morgan v. Cincinnati Insurance Co., supra; Krupp v. Aetna Life & Casualty Co., supra; Winter v. Aetna Casualty & Surety Co., supra; Lovell v. Rowan Mutual Fire Insurance Co., supra; McCracken v. Government Employees Insurance Co., supra; Ryan v. MFA Mutual Insurance Co., supra; Hedtcke v. Sentry Insurance Co., supra.*

Our research discloses that only two courts applying the contract construction analysis have denied recovery to an innocent spouse. See: *Spezialetti v. Pacific Employees Insurance Co., supra; Bryant v. Allstate Insurance Co.,*

*supra.* In *Spezialetti,* a policy exclusion voided the policy upon the commission of a wrongful act by "any insured," and in *Bryant,* the policy excluded coverage to "an insured" who failed to take reasonable efforts to save and preserve the property. The language in these policies, the courts held, unequivocally excluded coverage for both spouses in the event of a wrongful act by either.[4]

The relevant exclusion clause [5] in the Aetna policy issued to the Maravichs provided as follows:

We do not cover loss resulting directly or indirectly from:

. . . .

5. *Neglect,* meaning neglect of the *insured* to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered by a Peril Insured Against.

In *St. Paul Fire and Marine Insurance Co. v. Molloy, supra,* the Maryland Supreme Court construed an identical exclusionary clause. The Court observed that "[n]owhere in the policy is the precise nature of either the named insured's interest in the insurance contract or the insured's obligations under that contract specifically defined to be either joint or several." *Id.,* 291 Md. at 152–54, 433 A.2d at 1142. To alleviate the ambiguity, the Court adopted a rule of construction, which had first been espoused by the New Jersey Superior Court, as follows:

[With respect to a fire insurance policy covering the interests of more than one insured] 'there is much to commend the view that, unless the terms ... [thereof]

**4.** Although the *Bryant* court purported to base its holding on the unambiguous terms of the insurance contract, it is clear that the public policy against benefitting a wrongdoer weighed heavily in its decision. In *Bryant,* the wife, who was attempting to recover the insurance proceeds, had been indicted, along with her husband, for the arson of their jointly held home. The charges against the wife had only been dropped as part of her husband's plea bargain.

**5.** Aetna argues in a supplemental brief that two additional provisions within the insurance policy should be read to exclude coverage to an innocent spouse in this situation. We reject this argument. After carefully reviewing the policy provisions cited by Aetna, we conclude that they are inapplicable to the claim made in this case.

are plainly to the contrary ... the obligation of the carrier should be considered several as to each person insured, and the fraud or misconduct of one insured should not bar recovery by the innocent coinsureds to the extent of their respective interests in the property involved.'

*St. Paul Fire and Marine Insurance Co. v. Molloy, supra* at 152–54, 433 A.2d at 1142, quoting *Howell v. Ohio Casualty Insurance Co.,* 130 N.J.Super. 350, 356–57, 327 A.2d 240, 243 (1974). The Maryland Court held, therefore, that the exclusion clause voided only the coverage provided to the insured who had been responsible for causing the loss. *Id.* See also: *Commercial Union Insurance Co. v. State Farm Fire and Casualty Co., supra* (court reached same conclusion after considering identical exclusionary provision).

We adopt this reasoning. The insured in Aetna's policy was defined as husband and wife. The policy did not define whether the interests of husband and wife in the policy were joint and indivisible or separate. The exclusionary language did not unequivocally exclude coverage for an innocent spouse in the event the property was burned by one of them. We construe this ambiguity in favor of the insured. It was reasonable, under such a policy, that an innocent spouse would expect to be indemnified against a loss which, as to her was fortuitous, and which was not excluded and, therefore, covered by the terms of the policy.

In many of the decisions which have reached the same or a similar result, the spouses were either separated or divorced, or the guilty spouse had died in the fire. In the instant case, however, the spouses are alive and are living together as husband and wife. Aetna argues that to allow the wife to recover one-half of the loss would be contrary to that public policy which prevents a person from benefitting from his own criminal act. The husband will have access to the insurance proceeds because of the marital relationship, Aetna contends, and will thereby be allowed to benefit from his own wrongdoing. This argument is based upon a well

settled public policy consideration which prohibits recovery to an insured who has fraudulently set fire to property covered by a policy of fire insurance. 18 Couch, *Couch on Insurance 2d* § 74:663 (1984). See: *General Electric Credit Corp. v. Aetna Casualty & Surety Co.*, 437 Pa. 463, 473, 263 A.2d 448, 454 (1970). Indeed, this policy consideration has caused at least one court to suggest that different rules may be necessary in cases where the guilty spouse survives. See: *American Economy Insurance Co. v. Liggett, supra* 426 N.E.2d at 144.

However, the major concern of the cases denying recovery seems to be a substantial potential for collusion between the spouses. As one court has noted, "[p]articularly in the husband and wife cases, an equally guilty spouse might recover policy proceeds because of the difficulty of proving participation in or knowledge of the arson committed by the other spouse." *Spezialetti v. Pacific Employees Insurance Co., supra* at 1141.

However, other courts which have considered this public policy dilemma have not allowed it to defeat recovery by an innocent spouse. See, e.g., *Commercial Union Insurance Co. v. State Farm Fire & Casualty Co., supra; Fuston v. National Mutual Insurance Co., supra; Hildebrand v. Holyoke Mutual Fire Insurance Co., supra; Krupp v. Aetna Life & Casualty Co., supra.* The Federal District Court in Colorado summarized the reasons for resolving this dilemma in favor of the innocent spouse as follows:

It is the Court's view that in balancing the equities of the case at bar, the facts and circumstances favor the payment to the innocent spouse and children. They have lost indemnified property from an event that is fortuitous as to them. Prevention of this unforseeable [sic] event by any of them was not possible since there was apparently no precedent for this act of arson in Julian Oxford's life. Nor is there any profit to the wrongdoer in the sense of advantage or gain. As the Court stated in *Erlin-Lawler*

*Enterprises, Inc. v. Fire Insurance Exchange,* 267 Cal. App.2d 381, 73 Cal.Rptr. 182, 186 (1968):

> Mere family relationship to the arsonist which does not bestow a property right or other direct financial benefit in the proceeds of insurance does not bar a recovery.

Here the only benefit to the arsonist is an indirect one whereby his spouse and children recover what the spouse and children had already owned and insured. The wrongdoer has no gain, advantage or recovery of what he owned prior to the fire.

*Commercial Union Insurance Co. v. State Farm Fire & Casualty Co., supra* at 547.

We conclude that this is the better view. "In the last analysis it is much to be preferred that we depend upon the efficacy of the judicial process to ferret out the meritorious from the fraudulent rather than using a broad broom to sweep away a class of claims, a number of which are admittedly meritorious." *Hack v. Hack,* 495 Pa. 300, 315, 433 A.2d 859, 867 (1981), quoting *Falco v. Padas,* 444 Pa. 372, 381, 282 A.2d 351, 355–356 (1971).

Although the Supreme Court of Pennsylvania has not had occasion to consider this precise issue, there is reason to believe that it would follow the majority view. In *Giacobetti v. Insurance Placement Facility of Pennsylvania,* 500 Pa. 447, 457 A.2d 853 (1983), the Court was faced with a dilemma similar to but not the same as that which has arisen in the instant case. There, a grocery store owned and operated by a family trust had been burned intentionally by one of the trustees. The store was insured by a policy which named the insured as follows: "Manusov Family Trust, Harry Kracoff, Trustee, and Harry Kracoff, A.T.I.M. A.," the initials being shorthand for "as their interests may appear." Three additional trustees had been innocent of any part of the arson. The Supreme Court held that the wrongful act of Harry Kracoff did not excuse the insurance company from its contractual obligation to the beneficiaries of the family trust but did justify the insurer's retention of

the share of insurance proceeds to which Harry Kracoff and his issue would otherwise have been entitled as beneficiaries of the trust. The insurer's right to retain proceeds payable to Kracoff, the Court concluded, gave "full effect to 'the common law principle that a person will not be permitted to profit by his own wrong, particularly his own crime.'" *Id.*, 500 Pa. at 454–455, 457 A.2d at 857, quoting *Greifer Estate*, 333 Pa. 278, 279, 5 A.2d 118, 119 (1939). "[A]bsent evidence that the other beneficiaries assisted in or approved of Harry Kracoff's wrongful conduct," the Court held, "there is no basis for prohibiting recovery by the other beneficiaries." *Id.*, 500 Pa. at 455, 457 A.2d at 857. The Court remanded for the entry of a judgment which would permit recovery by the innocent beneficiaries of the trust while, at the same time, denying any benefit to the wrongdoer.

The evidence in this case was that David Maravich had intentionally set the fire which damaged the home and contents owned by husband and wife as tenants by the entireties. There was no evidence that Donna Maravich had had prior knowledge of her husband's intention to burn their home or that she had assisted in any way in causing the fire. As to her, the fire was fortuitous. By allowing Aetna to retain one-half of the loss, we give effect to the common law principle that David Maravich should not be permitted to profit from his own wrong. There is no public policy consideration, however, which prevents the innocent spouse from recovering the indemnity which Aetna had agreed to pay for the loss which she sustained. A mere family relationship with the arsonist is inadequate to defeat the recovery of such indemnity.

Judgment affirmed.

SPAETH, President Judge, concurs in the result. (This vote was entered before the expiration of President Judge SPAETH's term on the court).