**Allen v. Daniels.**

*Michael F. Barret*, for plaintiff.
*Benjamin A. Post*, for defendant.

ALEJANDRO, *J.*, June 27, 2012—On May 19, 2009, Rolan Allen (plaintiff) commenced a medical malpractice action against numerous health care providers; to wit: Michael A. Daniels, M.D. (defendant), Albert Einstein Healthcare Network, Germantown Community Health

Services and Albert Einstein Medical Center.[1] In his complaint, plaintiff alleged, inter alia, that defendant performed an unnecessary medical procedure, which caused a permanent urethral injury and lifelong problems related to urinary incontinence. After a five-day trial, the jury disagreed with plaintiff's claims and found in favor of defendant. Thereafter, plaintiff filed a post-trial motion requesting a new trial. The denial of said motion by the undersigned trial judge led to plaintiff's instant appeal.

## FACTUAL AND PROCEDURAL HISTORY

Based on the evidence presented at trial, it is reasonable to infer that the jury considered the following relevant facts when rendering its verdict:

Since 2000,[2] plaintiff treated with defendant for a condition diagnosed as a benign prostatic hyperplasia (hereinafter "BPH"), or an enlarged prostate gland, which was constricting the channel through which his urine exits the body.[3] Generally, the modalities to treat BPH, (i.e., to shrink or remove excess prostate tissue), consists of medication, a non-invasive office procedure, and/or surgery.[4]

Plaintiff contends that defendant offered him another alternative to treat his condition: "Transurethral Microwave Thermotherapy" (hereinafter "TUMT"), a procedure that uses microwave energy to remove

---

1. On February 4, 2011, the parties entered into a stipulation whereby Albert Einstein Healthcare Network, Germantown Community Health Services and Albert Einstein Medical Center were dismissed as party defendants.
2. N.T. 10/25/2011 at 18:4-7.
3. N.T. 10/24/2011 at 93:2-94:21; 10/25/2011 at 97:6-19.
4. N.T. 10/24/2011 at 95:14-17.

the excess prostate tissue restricting urine flow.[5] On October 5, 2007, plaintiff underwent the TUMT procedure to address his prostatic hyperplasia. Prior to the procedure, defendant again explained the TUMT procedure, the risks, and the treatment alternatives available to plaintiff. Satisfied, plaintiff signed the informed consent form, which outlined the explanation provided.[6] Plaintiff, however, did not want a catheter inserted during the procedure and defendant acquiesced to his request.[7] Of note, plaintiff testified that he was taking numerous medications, including but not limited to: medication for a bi-polar disorder; Haldol; Tegretol; Cogentin; Metformin (for diabetes); Stenolol; Sinopril; Lodipine; Tonormin; Aspirin for blood pressure; Vitolimin for high triglycerides; Avodart for enlarged prostate; and a multivitamin.[8]

Because plaintiff did not have a catheter following the procedure, he was instructed to drink as much water as possible and that he could not leave until he urinated.[9] After he was able to urinate a small amount,[10] plaintiff was discharged from defendant's office without a catheter.[11]

Plaintiff testified that afterwards he went to a convenience store for lunch. He described feeling an urgency to urinate while waiting for his food order and did so in the parking lot, where only a few drops came

5. *Id.* at 95:12-96:7.
6. N.T. 10/25/2011 at 80:2-23.
7. *Id.* at 82:3-6.
8. *Id.* at 17:6-25.
9. *Id.* at 31:1-5.
10. *Id.* at 31:6-12.
11. *Id.* at 31:1-11.

out but some relief was attained.[12]

Later that evening, plaintiff was unable to urinate and went to Chestnut Hill Hospital emergency room, where medical personnel inserted a catheter to relieve his bladder. Plaintiff testified that he recalled discussing with a triage person that he was experiencing a high level of pain.[13] He was discharged that evening with an inserted catheter.[14]

On October 11, 2007, plaintiff had his first post-procedure visit with defendant, who removed the inserted catheter that had been placed at Chestnut Hill Hospital six (6) days earlier.[15]

Still unable to urinate normally, plaintiff returned to Chestnut Hill Hospital on October 18, 2007, and another catheter was inserted.[16] This catheter was subsequently removed by defendant.[17]

During a third visit to defendant on October 30, 2007, plaintiff was taught how to self-catheterize whenever he was unable to empty normally his bladder.[18]

Plaintiff testified that he continued to experience pain,[19] particularly to his left testicle and that both testes had become swollen.[20] Plaintiff was admitted into

---

12. *Id.* at 31:14-32:5.
13. N.T. 10/25/2011 at 34:19-35:1.
14. *Id.* at 33:1-34:7.
15. *Id.* at 82:11-18.
16. *Id.* at 82:21-83:17.
17. *Id.* at 83:14-21.
18. *Id.* at 83:22-84:3.
19. *Id.* at 34:17-35:1.
20. *Id.* at 40:1-8, 40:22-23.

Presbyterian Hospital on October 31, 2007,[21] where he remained hospitalized for approximately two days,[22] and received morphine for his pain.

On November 14, 2007,[23] plaintiff began treatment with Dr. Ginsberg, who found a hole in plaintiff's urethra.[24] Plaintiff testified that since undergoing the TUMT procedure, he is unable to urinate normally; has to react swiftly to the urge to urinate; has difficulty controlling the flow of urine and at times must relieve himself in a bathtub; and to avoid embarrassment, he wears pads to absorb any urine that dribbles out after urinating.[25] Flomax was prescribed for his urinary problems.[26]

Prior to the commencement of trial, oral argument was heard on the parties' numerous motions in limine, including, inter alia, the motions which are the subject of this appeal; to wit: Plaintiff's motion to preclude the introduction of evidence and testimony concerning plaintiff's informed consent (which was denied);[27] and defendant's motion to preclude any references to diagnostic testing frequency; billing records, charges for office visits and procedures; and the cost for leasing and/or purchasing the equipment used to perform the TUMT procedure. This motion was granted[28] and plaintiff was precluded from offering a portion of defendant's deposition testimony, wherein he testified that the machine used to perform the TUMT

21. N.T. 10/24/2011 at 133:13-14.
22. N.T. 10/25/2011 at 41:16-17, 43:6-8.
23. *Id.* at 44:14-15.
24. *Id.* at 46:6-17.
25. *Id.* at 47:4-24.
26. *Id.* at 44:14-45:1
27. Control number 19-11100619.
28. Control number 58-11100758.

procedure costs approximately $40,000 and is used only for the microwave treatment.

In response to counsel's inquiry regarding the ruling allowing evidence of plaintiff's informed consent form, this trial judge stated:

> It means that Dr. Daniels can use the informed consent with regard to saying I told him all the risks involved, including—I don't know if this is going to be part of it—including that we might have to put a catheter after the procedure, we may not, because that's part of the contested issue.[29]

On October 28, 2011, the jury found in favor of defendant.[30]

On November 4, 2011, plaintiff filed a post-trial motion seeking a new trial, arguing that the consent forms were erroneously admitted into evidence and that the testimony regarding the consent forms was prejudicial to plaintiff and swayed the jury's decision against him; and that error was also committed in granting defendant's motion in limine.

On February 16, 2012, this trial judge heard oral argument on the post-trial motion. By order dated February 21, 2012, plaintiff's post-trial motion was denied.

On February 23, 2012, pursuant to Pennsylvania Rule of Civil Procedure (Pa.R.C.P.) 227.4(2),[31] Defendant filed a praecipe to enter judgment upon the verdict.

---

29. N.T. 10/24/2011 at 16:7-14.

30. N.T. 10/28/2011 at 2:8-19.

31. "...[T]he prothonotary shall, upon praecipe of a party;...(2) enter judgment when a court grants or denies relief but does not itself enter judgment or order the prothonotary to do so. Pa.R.C.P. 227.4(2).

On February 23, 2012, plaintiff/appellant filed the instant appeal.

## ISSUES

In response to an order issued on March 7, 2012, in accordance with Pennsylvania Rules of Appellate Procedure (Pa.R.A.P.) 1925(b), plaintiff on March 14, 2012, filed of record and served onto this trial judge a concise statement of errors complained of on appeal; to wit:

1. Whether the court abused its discretion and/or committed an error of law by permitting Michael A. Daniels, M.D., to introduce evidence, documentation and testimony concerning informed consent in a medical negligence case at the time of trial resulting in an unfair trial and improper verdict for the defendant, thereby warranting a new trial?

2. Whether the court abused its discretion and/ or committed an error of law by precluding Rolan Allen from introducing evidence, documentation and testimony regarding Dr. Daniels' costs for leasing and/ or purchase of equipment used to perform the TUMT procedure and Dr. Daniels' billing records and charges for office visits, procedures and the TUMT procedure resulting in an unfair trial and improper verdict for the defendant thereby warranting a new trial?

## LAW AND DISCUSSION

As noted, plaintiff contends that this trial judge made erroneous and prejudicial rulings regarding the two referenced motions in limine. This trial judge opines that the rulings were correct and, further, that no abuse of

discretion or error of law occurred when denying the post-trial motion and plaintiff's request for a new trial.

Clearly, a court may order a new trial as to any or all of the issues presented by a written post-trial motion filed by any party if the grounds for relief were raised "in pre-trial proceedings or by motion, objection, point for charge, or by request for findings of fact or conclusions of law." Pa.R.C.P. 227.1 (a), (b). A trial judge's order granting a new trial is an effective instrumentality for seeking and achieving justice in those instances where the original trial, because of taint, unfairness, or error, produces something other than a just and fair result, which, after all, is the primary goal of all legal proceedings. *Harman ex rel. Harman v. Borah*, 562 Pa. 455, 464, 756 A.2d 1116, 1121 (2000), app. den., 567 Pa. 762, 790 A.2d 1017 (2001) (quoting *Dornon v. McCarthy*, 412 Pa. 595, 597, 195 A.2d 520, 522 (1963)); see *Claudio v. Dean Mach. Co.*, 574 Pa. 359, 368, 831 A.2d 140, 145 (2003), rearg. den., 2003 Pa. LEXIS 556 (Pa. Apr. 11, 2003) (the purpose of Rule 227.1(b) "is to provide the trial court with an opportunity to review and reconsider its earlier rulings and correct its own error").

The appellate court, when reviewing a trial court's decision to grant or deny a motion for new trial, must examine "the trial court's underlying decision as to whether a mistake was made." *Morrison v. Dep't. of Pub. Welfare*, 538 Pa. 122, 133, 646 A.2d 565, 571 (1994). The trial court, therefore, must determine whether a mistake involving factual, legal, or discretionary matters was made at trial. *Harman*, 562 Pa. at 466, 756 A.2d at 1122; *Morrison*, 538 Pa. 133, 646 A.2d at 571. If the trial court admits to any mistake(s), "it must determine whether

the mistake was of a sufficient basis for granting a new trial." *Harman*, 756 A.2d at 1122. The mistake must have produced more than a harmless error and not be due to "some irregularity" occurring during trial or whether "another trial judge would have ruled differently." *Id.* "[T] he moving party must demonstrate to the trial court that prejudice was suffered as a result of the mistake." *Id.*

In addition, appellate review requires a determination of "whether the trial court abused its discretion in ruling on the request for a new trial." *Harman*, 562 Pa. at 468, 756 A.2d at 1123 (citing *Morrison*, 538 Pa. at 131, 646 A.2d at 570). An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. *Harman*, 562 Pa. at 468, 756 A.2d at 1123; Whyte v. *Robinson*, 617 A.2d 380, 382 (Pa. Super. 1992) ("a new trial may not be granted merely because the evidence conflicts and the jury could have decided for either party"). The scope of review of a trial court's discretion is limited to the "specific reasons for its ruling on a request for a new trial." *Harman*, 562 Pa. at 468, 756 A.2d at 1123.

This trial judge opines that no mistake involving factual, legal, or discretionary matters was committed at trial and, therefore, a new trial is not warranted. Reliance was made, in part, upon the Pennsylvania Rules of Evidence (Pa.R.E.), which govern court proceedings. These rules provide, in general, that all relevant evidence is admissible, unless otherwise provided. Pa.R.E. 402. Relevant evidence is defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less

probable than it would be without the evidence. Pa.R.E. 401. Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Pa.R.E. 403. The admission of evidence is within the sound discretion of the trial court and a trial court's rulings on the admission of evidence will not be overturned absent an abuse of discretion or misapplication of law. *Schuenemann v. Dreemz, LLC*, 34 A.3d 94, 100 (Pa. Super. 2011).

## Informed Consent

In his first appellate argument, plaintiff contends that evidence regarding the informed consent forms was not relevant to *his* prima facie claim of medical malpractice because a matter involving a strict informed consent claim requires proof of a battery, wherein a claim of medical negligence does not. Plaintiff further posits that the testimony and evidence regarding plaintiff's consent, which he contends was elicited and introduced ad nauseam by defendant's counsel, caused unfair prejudice, confusion of the issues, and/or misled the jury. Plaintiff asserts that the prejudice suffered was further aggravated when this trial judge allowed the jury, upon request during deliberation, to review the consent forms. Notwithstanding these arguments, it was plaintiff's principal contention that the TUMT procedure was not indicated and that defendant should never have performed this procedure on him.

Although the doctrine of informed consent is not an issue in this matter, a brief mention of this doctrine is required. Pennsylvania law requires a physician to "obtain informed consent from a patient before performing a surgical or operative procedure." *Montgomery v. Bazaz-*

*Sehgal*, 798 A.2d 742, 748 (Pa. 2002) (citing). Specifically, the informed consent doctrine provides that:

> [P]hysicians [are] to provide patients with material information necessary to determine whether to proceed with the surgical or operative procedure or to remain in the present condition. We have on several occasions defined the nature of this "material information." We have stated that the information provided by a physician must give the patient a true understanding of the nature of the operation to be performed, the seriousness of it, the organs of the body involved, the disease or incapacity sought to be cured, and the possible results. Thus, a physician must advise the patient of those material facts, risks, complications and alternatives to surgery that a reasonable person in the patient's situation would consider significant in deciding whether to have the operation.

*Montgomery*, supra, 568 Pa. at 583, 798 A.2d at 748. Without the consent of the patient, the performance of a surgical procedure would amount to assault or a battery. *Id.*

As stated, plaintiff's claim of negligence centered primarily on the contention that plaintiff was not a candidate for the TUMT procedure and, therefore, defendant was negligent in having had plaintiff undergo the procedure. Plaintiff emphatically argued that this was not an informed consent case; it was a negligence matter.

Undisputedly, evidence and argument pertaining to plaintiff's consent to undergo the TUMT procedure arose on several occasions during trial. For instance, in the opening statement, defendant's counsel stated to the jury

that the TUMT procedure was done appropriately and that it was "the decision of the patient."[32] He further stated that:

> You're going to see that there were consent forms involved, and you're going to see that there was communication and collaboration with Mr. Allen in the hope of getting him off at least some of the medication that was now being used for his prostate.[33]

In addition, during the cross-examination of plaintiff's expert witness, Michael Palese, M.D., plaintiff's TUMT procedure consent form was published to the jury, and Dr. Palese was questioned regarding the medical alternatives, risks, and implications of TUMT.[34]

On cross-examination, plaintiff admitted to signing two consent forms and having been explained by defendant the reasons for the procedure, the alternative treatments of his prostatic hyperplasia condition, and the implications of the procedure.[35]

On direct examination, defendant testified, in general terms, to the explanation he routinely gives to his patients, including plaintiff, regarding the risks of and alternatives to the TUMT procedure.[36] Defendant further testified that his reasons for doing the TUMT procedure on plaintiff were to correct his BPH condition and to reduce or eliminate plaintiff's dependency on medications for his urinary problems.[37]

---

32. N.T. 10/24/2011 at 68:15-21.
33. *Id.* at 66:25-67:11.
34. *Id.* at 182:21-184:8.
35. N.T. 10/25/2011 at 79:13-14,79:22-23,80:16-81:6.
36. N.T. 10/25/2011 at 124:19-126:3, 155:4-156:4, 157:9-21.
37. *Id.* at 129:13-21.

Defendant further testified that plaintiff had been his patient for many years. During the course of care, defendant had discussed with plaintiff numerous treatment options for his urinary problems and the limitations of these treatment options in light of his complex medical history. Defendant argues that the fact that he explained the risk and alternative of the TUMT procedure to plaintiff was relevant and critical to the issue of whether the TUMT procedure was medically appropriate or indicated *for* plaintiff's care. Defendant asserts that the evidence regarding the consent forms was not intended to show that plaintiff signed these documents or to establish that he assumed the risk of the procedure. Rather, this testimony was relevant and necessary for the jury's full understanding of the care rendered and for its determination of whether defendant was *in fact* negligent in suggesting, prescribing, and performing the TUMT procedure, evidence which clearly addresses plaintiff's main argument in this case.

At the close of evidence, the following jury instruction was given:

Now, you have heard evidence regarding several consent forms. Simply because something is a risk of a procedure and can happen without negligence does not mean that a doctor is not negligent when the harm occurs. The question is whether in these instances the injury occurred because of the negligence—because of the negligence as I have defined it. When signing a consent form, a patient does not consent to or assume the risk of an injury due to malpractice or the negligence by his physician.[38]

---

38. N.T. 10/26/2011 at 123:10-21; 131:12-132:25.

Of note, neither party lodged an objection to this charge, nor requested an additional charge with respect to the informed consent issue.[39]

While plaintiff argues that prejudicial error was committed in allowing the use of the informed consent forms, case law does not support his argument. In *Lomax v. Thomas Jefferson Univ. Hosp.*, 24 Phila. 224 (Pa. C.P. 1992), aff'd, 627 A.2d 208 (Pa. Super. 1993), app. den., 535 Pa. 675, 636 A.2d 634 (1993), the appellant argued that the testimony and evidence regarding the informed consent form was irrelevant because Ms. Lomax "did not at anytime make an issue of lack of informed consent." *Id.* at 237. The trial judge therein opined (and the appellate court affirmed) that the consent form was relevant because it allowed the jury to get a "complete picture" of the case, particularly in determining whether or not perforations of the bowel were a recognized risk of the procedure performed. *Id.*

Further, to prevent any confusion as to the purpose and relevance of the consent form, the trial court therein, as did the trial judge herein, instructed the jury that the admissibility of the consent form:

> [D]oesn't mean the defendant was given permission to be negligent just because she signed a form indicating that she was advised what the risks were. Whether the defendant was negligent or not is for you to determine apart from all this and based on the evidence in the case....

*Id.* at 238.

---

39. N.T. 10/27/2011 at 3:22-4:19.

In this trial judge's opinion, defendant introduced the issue of consent to negate plaintiff's charges against him— that is, that the TUMT procedure was medically necessary. In this trial judge's opinion, the issue of consent and the consent forms were pertinent to the jury's understanding of the "complete picture" of the progressive treatment and care provided by the defendant to plaintiff as part of their long-term patient-physician relationship. Defendant testified that he was concerned with plaintiff's dependency on numerous medications for his physical ailments. It was his opinion that the TUMT procedure would correct the BPH condition and reduce plaintiff's dependency on some of those prescriptive medicines.[40] Evidence of the informed consent form was, therefore, relevant to demonstrate defendant's explanation of and the need for the procedure, as well as to indicate the gravity of plaintiff's medical condition, the expectation that numerous medications taken by plaintiff would be reduced, and to rebut plaintiff's assertion that the TUMT procedure was unnecessary. Whatever marginal prejudicial effect, if any, cast upon the jury's minds by the consent forms, was addressed by the express jury instruction given; i.e.; that despite signing an informed consent form, plaintiff "does not consent to or assumes the risk of an injury due to malpractice or the negligence by his physician."[41] Consequently, this trial judge opines that this argument is without merit.

## Precluded Evidence

In his second appellate issue, plaintiff argues that this trial judge erroneously precluded evidence and testimony

---

40. N.T. 10/25/2011 at 2011, 129:13-21.
41. N.T. 10/26/2011 at 123:10-21.

concerning defendant's billing records and charges for office visits, as well as the costs of leasing and/or purchasing the equipment used to perform the TUMT procedure. Specifically, plaintiff claims that the aforesaid information was relevant and probative to the credibility of defendant, particularly, to the monetary motivation associated with performing the allegedly unnecessary TUMT procedure.

Plaintiff's allegations are of medical malpractice. To prove his claim, he must present a preponderance of evidence to prove: (1) a duty owed by defendant to him, the patient; (2) a breach of that duty; (3) as a result of the breach he suffered damages; (4) and his injuries were the outcome of that harm. See *Grossman v. Barke*, 868 A.2d 561, 566 (Pa. Super. 2005), app. den., 585 Pa. 697, 889 A.2d 89 (2005). In this trial judge's opinion the mere cost of the TUMT equipment and even defendant's billing practices, without more, is clearly not relevant to his breach of the standard of care claim.

Notwithstanding, plaintiff relies on *Maravich v. Aetna Life & Casualty Co.*, 504 A.2d 896, 898 (Pa. Super. 1986), for the proposition that negligence may be established by evidence of motive to commit the alleged negligent act. In *Maravich*, the court held that "where it is disputed whether a person has done a certain act, evidence is admissible... to show the existence of a motive on his part to do it." *Id.* The plaintiffs-insured, Mr. and Mrs. Maravich, sued their insurer, Aetna Life & Casualty, to recover on a fire insurance policy. The jury found that the fire had been set intentionally by Mr. Maravich. *Id.*, 504 A.2d at 897-98, 350 Pa. Super. 392. Having the burden to prove that the insured caused the fire, Aetna was permitted to introduce evidence

that the jury could legitimately infer "that the insured had burned or caused to be burned his own property." *Id.* at 898. "Although proof of motive was not essential, the existence of a motive was relevant and was a part of the circumstantial evidence to be considered by the jury." *Id.,* As part of its legal theory, Aetna introduced "evidence of statements made by [Mr.] Maravich that he had sustained large gambling losses and was in debt because of them." *Id.* The appellate court affirmed the judgment of the trial court. *Id.* at 908.

This trial judge opines that plaintiff's reliance on the holding in *Maravich* is misplaced; and that the legal judgment employed in *Maravich*, does not apply here. *Maravich* involved a claim of an *intentional* act of arson in pursuit of insurance recovery. Here, the issue is whether defendant was negligent in prescribing and performing an allegedly unnecessary medical procedure. While plaintiff attempted to relate the cost of defendant's medical equipment and charges for office visits to the claim that the procedure was unnecessary, and that defendant needed to recoup the costs of medical equipment involved in the procedure, this trial judge opines that this argument is too speculative to be allowed.

The issue herein is whether the defendant breached a duty of care owed to Plaintiff by recommending an allegedly unnecessary TUMT procedure. Any evidence of the costs for leasing and/or purchasing the TUMT equipment is not only irrelevant to whether the defendant breached the standard of care required, and is also highly prejudicial to the defendant and purely speculative. To imply that defendant performed the TUMT procedure solely for financial gain—presumably to pay off the new

TUMT—without proof, beyond the evidence of the actual cost of the equipment and defendant's billing financial records, is highly speculative, unfair, and prejudicial to defendant and would mislead the jury from the actual issue of the case; to wit: whether defendant was liable for a breach in the medical standard of care. See Pa. R.E. 403. This rule also provides that even if this evidence was relevant, it still may be excluded since its probative value is outweighed by the danger of unfair prejudice, confusion of the issue, or misleading to the jury. Pa.R.E. 403.

Based upon the analysis made herein, this trial judge opines that no error of law occurred in denying the introduction of evidence and testimony concerning defendant's billing records and charges for office visits, as well as the costs for leasing and/or purchasing the TUMT equipment. Further, this ruling did not constitute an abuse of the court's discretion but rather was one made on sound reasons.

## CONCLUSION

Based on the foregoing analysis, this trial judge is of the opinion that no mistake of fact, errors of law, or abuse of discretion occurred in permitting evidence regarding the informed consent forms, nor in precluding evidence concerning defendant's billing records, office charges, and the costs for leasing and/or purchasing the equipment used to perform the TUMT procedure. Therefore, this trial judge respectfully requests that this appeal be dismissed and that the order denying plaintiff's motion for post-trial relief be affirmed.