MUTUAL BENEFIT INSURANCE COMPANY, Appellee

v.

Christos POLITOPOULOS and Dionysios Mihalopoulos and Marina Denovitz, Appellants.

Superior Court of Pennsylvania.

Argued Dec. 5, 2012.

Filed Sept. 6, 2013.

Reargument Denied Nov. 6, 2013.

Neil E. Durkin, West Conshohocken, for Denovitz.

James C. Haggarty, Philadelphia, for Denovitz, Politopoulos, Christos, Dionysios and PA Assoc. for Justice.

Matthew A. Grosh, Lancaster, for Politopoulos, Christos and Dionysios.

Robert W. Jozwik, Philadelphia, for Mutual Benefit.

BEFORE: BOWES, J., OLSON, J., and WECHT, J.

OPINION BY WECHT, J.:

Marina Denovitz (with Christos Politopoulos and Dionysios Mihalopoulos, "Appellants") challenges the trial court's February 2, 2012 order granting summary judgment to Mutual Benefit Insurance Company ("Insurer").[1] We reverse.

The trial court has related the factual and procedural background of the case as follows:

On June 6, 2005, [Owners] purchased commercial real property located at 365 West Main Street in Leola, Pennsylvania, (the "Property") from Leola Associates, L.P. The Property includes a busi-

---

**1.** Christos Politopoulos and Dionysios Mihalopoulos, also identified herein as "Owners," are captioned herein collectively with Denovitz as Appellants. Yet, they self-identify as Appellees on the cover of their brief. Because they argue in support of reversal on the same basis as Denovitz, and because this is consistent with their status as parties to this action in light of the trial court's ruling, we treat Owners as appellants.

ness known as Leola Family Restaurant. [Owners] then created Leola Restaurant Corporation of which they are officers ("Employer"). (New Matter, ¶ 37–39.) [Employer] was created to run the day-to-day operations of the restaurant.

On the same date, Owners entered into a written agreement in which they leased the Property to Employer ("Lease"). (Compl. Ex. E.) The Lease required Employer to name Owners as additional insureds on Employer's liability insurance. (Compl. Ex. E ¶ 1(d).) On December 5, 2007, [Denovitz] was employed by Employer working at Leola Family Restaurant. (Compl. Ex. A ¶ 3.) Denovitz was walking down a flight of stairs taking trash to an outdoor trash containment area when the stairs became loose and she fell to the ground. (Compl. Ex. A ¶ 5.) As a result of the fall, Denovitz claims she sustained physical injury including a torn rotator cuff. (Compl. Ex. A ¶ 6.) On September 24, 2009, Denovitz filed a suit against Owners for their alleged negligent maintenance of the Property ("Denovitz action".) (Compl. Ex. A.)

Owners sought coverage for this claim from [Insurer] under two insurance policies issued by [Insurer] to Employer. The first policy was a Business Owners Policy, and the second was a Commercial Umbrella Policy [ ("Umbrella Policy") ]. (Compl. Exs. B, C.) By letter dated December 4, 2009, [Insurer] disclaimed coverage under both policies. (Compl. Ex. D.) In the letter, [Insurer] asserted that Owners did not qualify as insureds under the Business Owners Policy, and although Owners qualified as insureds under the [Umbrella Policy], the Employers' Liability Exclusion endorsement[2] excluded any coverage under that policy. (Compl. Ex. D.) By letter dated February 23, 2010, [Insurer] advised Owners that it had withdrawn its disclaimer of coverage and agreed to defend Owners in the Denovitz action with a reservation of its right to disclaim coverage in the future and seek a judicial determination that no coverage was owed. (Compl. Ex. F.)

On March 12, 2010, [Insurer] filed suit in the Court of Common Pleas of Lancaster County seeking a declaratory judgment that it owed no coverage to Owners under either policy. After the pleadings were closed, [Insurer] filed a Motion for Judgment on the Pleadings. On December 27, 2010, [the trial court] granted [Insurer's] Motion as to the Business Owners Policy but denied its Motion as to the [Umbrella Policy].

On September 23, 2011, [Insurer] filed a Motion for Summary Judgment seeking to eliminate coverage under the Umbrella Policy. In its Motion, [Insurer] claims that Summary Judgment is appropriate since the term "insured" under the Umbrella Policy includes ... Employer and therefore, the Employers' Liability Exclusion precludes coverage to all insureds, including ... Owners.

Trial Court Opinion ("T.C.O."), 2/2/2012, at 3.[3] Finding that our Supreme Court's decision in *Pennsylvania Manufacturers' Association Insurance Co. v. Aetna Casualty*

---

2. This endorsement excludes coverage for:

 1. An "employee" of the insured arising out of and in the course of:
 a. Employment by the insured; or
 b. Performing duties related to the conduct of the insured's business. . . .

3. In conformity with the requirements of Pa. R.A.P. 1925(b), with which the trial court and Appellant Denovitz have complied in full, the trial court issued an opinion on March 20, 2012, incorporating by reference its prior February 2, 2012 opinion. We rely upon this February opinion in reviewing the trial court's reasoning and disposition.

*and Surety Insurance Co.*, 426 Pa. 453, 233 A.2d 548 (1967) (hereinafter *"PMA"*), controlled this case, the trial court granted Insurer's motion for summary judgment. This appeal followed.

On appeal to this Court, Denovitz raises the following issues:

1. Whether the Court committed an error of law in granting the Motion for Summary Judgment of [Insurer] as to the ... Umbrella Policy when the Employers' Liability Exclusion is ambiguous and should be interpreted in favor of [Appellant]?

2. Whether the Pennsylvania Supreme Court decision in [*PMA*] should be overturned or reinterpreted in light of subsequent case law?

Brief for Denovitz at 2. Owners restate precisely the same questions, and propose the same answers as those urged upon us by Denovitz. Brief for Owners at 1 (un-numbered).

■■■ The trial court correctly stated the principles that apply to summary judgment, as follows:

Summary judgment is appropriate only when "there is no issue of any material fact as to a necessary element of the cause of action." Pa.R.C.P. 1035.2(1). The record, including the pleadings and depositions, "must be viewed in the light most favorable to the non-moving party." *Davis v. Pennzoil*, 438 Pa. 194, 264 A.2d 597, 601 (1970). All doubts regarding the existence of a material issue must be resolved in favor of denying the Motion for Summary Judgment. *Id.*

T.C.O. at 3 (citations modified). We have delineated our standard of review as follows:

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. In reviewing a grant of summary judg-ment, [we] may disturb the trial court's order only upon an error of law or an abuse of discretion. The scope of review is plenary and the appellate court applies the same standard for summary judgment as the trial court.

*Grandelli v. Methodist Hosp.*, 777 A.2d 1138, 1144 (Pa.Super.2001) (quoting *McCarthy v. Dan Lepore & Sons Co., Inc.*, 724 A.2d 938, 940–41 (Pa.Super.1998)).

■■■ If the language of an insurance policy is clear and unambiguous, that contract must be construed consistently with its plain and ordinary meaning. *Travelers Cas. & Sur. Co. v. Castegnaro*, 565 Pa. 246, 772 A.2d 456, 459 (2001). The trial court aptly stated the following additional principles:

[A]ny ambiguities in an insurance contract must be resolved in favor of the insured. *Coppola v. Ins. Placement Facility of Penna.* [386 Pa.Super. 413], 563 A.2d 134, 136 (Pa.[Super.]1989) (citing *Standard Venetian Blind Co. v. Amer. Empire Ins.* [503 Pa. 300], 469 A.2d 563, 566 (Pa.1983)). It is equally well-settled that "[n]o word in a contract is to be treated as surplusage or redundant if any reasonable meaning consistent with the other parts can be given to it." *General Mills Inc. v. Snavely* [203 Pa.Super. 162], 199 A.2d 540, 544 (Pa.[Super.]1964) (citing *Morris v. Am. Liab. & Sur. Co.* [322 Pa. 91] 195 [185] A. 201, 202 (Pa.1936)). Words are to be interpreted in their normal meaning, unless doing so would be contrary to a clearly expressed public policy. *Allstate Fire & Cas. Ins. Co. v. Hymes*, 29 A.3d 1169, 1172 (Pa.Super.2011) (quoting *Prudential Prop. & Cas. Ins. Co. v. Colbert* [572 Pa. 82], 913 [813] A.2d 747, 750 (Pa.2002)).

T.C.O. at 6–7 (citations modified).

In granting Insurer's motion for summary judgment, the trial court relied upon

our Supreme Court's decision in *PMA,* which it found controlling. Along the way, the trial court criticized the Supreme Court's opinion and suggested that subsequent case law in this Court had undermined its application. The parties have accepted the trial court's tacit invitation to engage and extend the trial court's criticism in their briefing to this Court. For the reasons that follow, we do not agree that *PMA* controls this case. However, we must review that precedent to explain fully our reasoning and disposition. Consequently, our discussion begins with *PMA.*

In that case, PMA insured Harry B. Niehaus, Jr., pursuant to an automobile injury liability policy as well as a workers' compensation policy. 233 A.2d at 549. Aetna, in turn, insured Delaware Wool Scouring Company ("Delaware") under a bodily injury policy. An employee of Niehaus drove a Niehaus truck to Delaware's facility. There, Niehaus's employee was injured by a Delaware employee using a Delaware forklift. The Niehaus auto policy undisputedly insured Delaware pursuant to an "omnibus clause." *Id.* An omnibus clause, common to automobile insurance policies, typically extends coverage to anyone who uses the insured vehicle with the permission of the named insured. *Patton v. Patton,* 413 Pa. 566, 198 A.2d 578, 582 (1964) (quoting 7 Appleman, Insurance Law & Practice § 4354 at 243). Although the parties did not dispute Delaware's status as an omnibus insured, PMA maintained that Delaware was subject to a liability exclusion barring insurance for injuries to Niehaus's employee. *PMA,* 233 A.2d at 550. That exclusion provided that coverage would not apply "to bodily injury * * * of any employee of the insured." *Id.* at 550 (quoting the policy; emphasis omitted).

In disputing this question, the parties relied on competing interpretations of the definition of "insured" under the PMA policy. The policy defined an insured, in relevant part, as follows: "With respect to the insurance for bodily injury liability * * * the unqualified word 'insured' includes the named insured." *Id.* (quoting the policy). The parties' dispute was informed by their divergent views of the definition's interplay with the policy's "severability of interest" clause, which provided that "the term 'the insured' is used severally and not collectively." *Id.* (quoting the policy).

Our Supreme Court held that the PMA policy's employee exclusion barred coverage not just for PMA but also for Delaware. The Court rejected the argument that the severability of interest clause warranted reading "the insured," as used in the employee exclusion, as "the insured being sued," and disagreed that the severability of interests clause excluded consideration of the fact that the injured party was not an employee of Delaware as an omnibus insured. Rather, because Delaware qualified as an "insured" under the policy's definition, the status of the injured party as Niehaus's employee had to be imputed to Delaware, thus excluding coverage for Delaware for the same reason as it would be excluded for Niehaus. *Id.* at 550–51.

In determining that *PMA* controlled the case at bar, the trial court here focused upon the definition of "insured" under the Umbrella Policy, which is materially similar to the definition of "insured" in *PMA.* T.C.O. at 5–6, 10. Although the trial court did not elaborate in much detail why it believed that *PMA* controlled, the court evidently concluded that the severability of interests clause could not vitiate the effect of the Umbrella Policy's definition of "the insured"—much as the Supreme Court held in *PMA.*

Before concluding that *PMA* controlled this matter, however, the trial court opined that "the reasoning and analysis in *PMA* is flawed." T.C.O. at 6. By way of explanation, the trial court contrasted *PMA* with this Court's later decisions in *Maravich v. Aetna Life & Casualty Co.*, 350 Pa.Super. 392, 504 A.2d 896 (1986), and *McAllister v. Millville Mutual Insurance Co.*, 433 Pa.Super. 330, 640 A.2d 1283 (1994). In *Maravich,* Aetna provided a fire insurance policy to David and Donna Maravich. David intentionally set fire to the insured residence, and Donna sought coverage. A policy exclusion eliminated coverage for a loss resulting from "neglect of the insured ... to save and preserve the property." *Maravich,* 504 A.2d at 905–06. This Court held that the term "neglect by **the** insured" excluded coverage only for the insured who was responsible for the fire, not for any other insureds under the policy. *Id.* at 904 (emphasis added). Accordingly, Donna was entitled to coverage. *Id.* at 906–08.

Conversely, in *McAllister,* the policy excluded coverage for "a loss which results from acts committed by or at the direction of **an** insured." 640 A.2d at 1285 (emphasis added). Unlike in *Maravich,* the policy in *McAllister* contained a "severability of interests" clause purporting to render the coverage several rather than joint. *Id.* at 1289. Nonetheless, this Court concluded that the use of an indefinite article (*i.e.,* "**an** insured") rather than a definite article (*i.e.,* "**the** insured") in the exclusion unambiguously rendered the operation of the exclusion joint rather than several. Consequently, an act by any one insured excluded from coverage by the policy would bar coverage as to all insureds. *Id.*

In the case *sub judice,* the trial court found that, "despite *PMA,* [Pennsylvania] appellate courts have not hesitated to examine and apply the precise policy lan-

guage employed even if it is only the difference between 'any' or 'an' insured and 'the' insured." T.C.O. at 8 (citing *Kundahl v. Erie Ins. Grp.,* 703 A.2d 542, 543–44 (Pa.Super.1997); *General Acc. Ins. Co. of Am. v. Allen,* 708 A.2d 828, 832 (Pa.Super.1998)). Turning to the Umbrella Policy, the trial court observed that, under the policy's severability clause, "the interests and coverage of [Owners] are severable from those of [Employer]." *Id.* Specifically, the policy, under "Separation of Insureds," provides as follows:

Except with respect to the Limit of Insurance, and any rights or duties specifically assigned to the **first named** insured, this insurance applies:

a. As if each **named insured** were the only **named insured;** and

b. Separately to each **insured** against whom **claim** is made or **suit** is brought.

Umbrella Policy at 11 ¶ 14 (emphasis in original).

The trial court reasoned that the precise language of the Employers' Liability Exclusion endorsement ("Employers' Exclusion") dictated whether coverage for Owners, as Employer's co-insured, should be barred. *Id.* The court noted that the Employers' Exclusion twice referred to "**the** insured" rather than "**an**" insured or "**any**" insured. Thus, the trial court concluded that, if the *Maravich/McAllister* paradigm applied, the Employers' Exclusion was materially identical to that in *Maravich,* entitling Owners to coverage. *Id.* at 8–9. The court further opined that, if such a result was not dictated under a plain language analysis, then the Umbrella Policy's use of the definite article rendered the policy ambiguous; as such, it should be interpreted in favor of Owners. *Id.* at 9 (citing *Coppola,* 563 A.2d at 136). The trial court nonetheless concluded that *PMA* trumped those cases, dictating the

converse result: "[D]espite [the trial court's] belief that the Supreme Court's analysis in *PMA* is flawed and outdated, [the court] must nonetheless apply it in the instant case." *Id.* at 10. Thus, the trial court entered summary judgment against Owners and in favor of Insurer.

As noted, *supra,* Appellants invite this Court to "overturn[ ] or reinterpret [*PMA* ] in light of subsequent case law," specifically *Maravich* and *McAllister.* Brief for Denovitz at 2; *see* Brief for Owners at 1 (unnumbered). We must reject Appellants' call upon this Court to "overturn or reinterpret" *PMA,* a decision that has stood for over forty-five years. We have no more authority than the trial court to overturn a prior decision of the Pennsylvania Supreme Court. *See Walnut St. Assoc., Inc. v. Brokerage Concepts, Inc.,* 610 Pa. 371, 20 A.3d 468, 480 (2011) ("It is beyond peradventure that the Superior Court must follow [the Supreme] Court's mandates...."). While we may interpret *PMA,* analogize it, harmonize it, or distinguish it consistently with sound principles of *stare decisis,* we may not "reinterpret" that decision in a way that confounds or subverts its rationale and holding. *See Behers v. Unemployment Comp. Bd. of Review,* 577 Pa. 55, 842 A.2d 359, 367 (2004) (holding that inferior courts' task "is to effectuate the decisional law of this Court, not to restrict it through curtailed readings"). Thus, if *PMA* controls, Appellants' reliance upon this Court's allegedly contrary precedent—like their reliance upon countervailing policy considerations or the contrary rules of other jurisdictions—necessarily is unavailing. Our opinion as to the soundness of *PMA* is irrelevant; in matters of Pennsylvania law, we serve only one master.

With that constraint in mind, we must determine whether the trial court erred as a matter of law or abused its discretion in interpreting the Umbrella Policy. *See Grandelli,* 777 A.2d at 1144. Relying upon *Maravich* and *McAllister,* Appellants argue that we should deem the policy ambiguous in this case based upon the Employers' Exclusion's use of the definite article. *See, e.g.,* Brief for Denovitz at 6–7. Because the Umbrella Policy employed the definite article in tandem with a severability clause, Appellants maintain, *Maravich* should control.

■ Denovitz's brief argument is supplemented by the lengthier analysis provided by *amicus curiae* Pennsylvania Association for Justice ("PAJ"), which relies in part on this Court's decision in *Luko v. Lloyd's London,* 393 Pa.Super. 165, 573 A.2d 1139 (1990).[4] Brief for PAJ at 9–12. In *Luko,* a longshoreman employed by Independent Pier Company ("IPC") was injured when he fell through a defective dock on the premises of Independent Terminal Company ("ITC"). At the time, both IPC and ITC were named insureds under each of two applicable policies. The insurer argued that neither IPC nor ITC was covered under the policy at issue due to an employee exclusion materially identical to the exclusion at issue in this case. 573 A.2d at 1140.

This Court disagreed. We acknowledged that the policy contained a plain-language employee exclusion, but noted that the policy was modified by an equally clear special endorsement to that policy. The endorsement provided that the "persons insured" provision was "amended to include any employee of the named in-

---

4. PAJ also relies upon a decision of the Court of Common Pleas of Allegheny County that attempted to harmonize *PMA* and *Luko,* ultimately applying the latter case. Brief for PAJ at 10–12. The decisions of the courts of common pleas do not bind this Court. *See Goddard v. Heintzelman,* 875 A.2d 1119, 1121 (Pa.Super.2005).

sured while acting within the scope of his duties as such." *Id.,* at 1144. Thus, IPC and ITC were covered for Luko's injuries under the policy.

In *dicta,* we opined that the same result would have obtained as a consequence of the policy's severability provision. Under the standard contract, the employee exclusion would exclude coverage for IPC, because Luko was an employee of IPC, but ITC would retain coverage because ITC was not Luko's employer. *Id.,* at 1144. However, as *dicta,* those comments lack any precedential force and effect, *Hunsberger v. Bender,* 407 Pa. 185, 180 A.2d 4, 6 (1962), even assuming they could be harmonized with *PMA.*

■ Even though we reject the main thrust of Appellants' argument, we believe that Appellants must prevail based upon the plain language of the Umbrella Policy, which is distinguishable from the language at issue in *PMA.*[5] The policy at issue in *PMA* was a standard automobile insurance contract. As such, it featured an omnibus provision, which is most commonly used in automobile insurance polices. Such a clause generally extends coverage to anyone who uses the insured vehicle with the permission of the named insured. *See, e.g., Patton,* 198 A.2d at 582. Thus, in *PMA,* the additional insured was not a "named insured," in the common-sense meaning of that term;[6] rather, the putative insured was qualified as such under the omnibus clause. In this case, however,

the Owners undisputedly were named insureds under the Umbrella Policy.

Of controlling importance, however, is the divergence between the wording of the "severability clause" at issue in *PMA* and the parallel clause in the case *sub judice,* a material distinction that the trial court neither acknowledged as such nor addressed. In *PMA,* the clause in question provided that "the term 'the insured' is used severally and not collectively," 233 A.2d at 550, a somewhat vague formulation complicated by the fact that Delaware was insured under an omnibus clause rather than as a named insured.

In this case, the Umbrella Policy's severability clause is worded far more particularly:

**14. Separation of Insureds**

Except with respect to the Limit of Insurance, and any rights or duties specifically assigned to the first named insured, this insurance applies:

a. As if each **named insured** were the only **named insured;** and

b. Separately to each **insured** against whom **claim** is made or **suit** is brought.

Umbrella Policy at 11 (emphasis in original).

While this resembles a severability clause indicating that coverage applies "severally" to numerous insureds rather than "jointly," the clause before us speaks with greater precision. Moreover, the clause prescribes a heuristic device to

---

**5.** Although Appellants do not develop this argument in detail, they call into question the trial court's interpretation of the insurance contract at issue. In resolving a duly raised question of contract interpretation, we face a question of law, which triggers our *de novo* standard of review and plenary scope of review. *See Grandelli, supra.*

**6.** To highlight one practical distinction, in this case, Owners were named insureds by agreement with Employer, presumptively in a bargained for exchange. An insured under an omnibus clause, by contrast, often, if not always, has no role in the design of the insurance contract. Rather, the omnibus clause either is included as a standard provision or is negotiated between the named insured and the insurer.

frame the interpretation of the policy: When determining coverage as to any one insured, the policy must be applied as though there were only one insured, *i.e.,* the one as to which coverage is to be determined. Moreover, neither the heading nor the content of the provision uses the word "several" or any variant thereof: Instead, it uses the words "separation" and "separately." Notably, the legal definition of "several" suggests a subtle distinction between those words: "2. (Of liability, etc.) separate; particular; distinct, **but not necessarily independent**...." Black's Law Dictionary 1378 (Deluxe 7th ed. 1999) (emphasis added). This definition resists the sort of clear separation called for by use of the word "separate," especially when viewed in the context of the unambiguous interpretive approach prescribed by the severability clause.

 When the language of the policy is plain, we do no more than apply it precisely as stated. *See Castegnaro,* 772 A.2d at 459. The words of the policy should be interpreted according to their normal meaning. *See Hymes,* 29 A.3d at 1172. Moreover, we must adopt any reasonable reading that gives effect to each provision of the policy. *See General Mills,* 199 A.2d at 544. Accordingly, the parties' and PAJ's emphasis on extra-jurisdictional precedent [7] and federal courts' interpretations of Pennsylvania law are immaterial unless the language of the policy is not sufficiently clear to enable us to discern the meaning of the policy therefrom. This is not such a case.

The plain, unambiguous language of the "Separation of Insureds" clause directs us to evaluate whether Owners are insured under the Umbrella Policy as though they are the only named insured, an analytic

conceit that is both clearer and stronger than a severability clause that simply identifies the insureds as "several" rather than "joint." In no uncertain terms, the policy language directs us to evaluate coverage as though Employer **does not exist.**

Informed by this conclusion, we now must turn to the Employers' Exclusion. Thereunder, coverage is excluded for " 'bodily injury' ... to ... [a]n 'employee' of the insured arising out of and in the course of ... [employment] by the insured; or ... [p]erforming duties related to. the conduct of the insured's business." Denovitz undisputedly never was in Owners' employ. However, if *PMA* controlled, we would be bound to impute her employee status to Owners by extension of her employee status relative to Employer. But unlike in *PMA,* we are directed by the Umbrella Policy not to consider Employer, or by extension Employer's relationship to Denovitz, when determining whether the policy provides coverage for Owners.

Finally, we must reject Insurer's argument that the Umbrella Policy's definition of insured precludes a finding of coverage. In this regard, the policy provides as follows:

> The words **you** and **your** in this policy refer to the **named insured** shown in the Declarations and all other persons or organizations qualifying as **named insureds** under this policy....
>
> The word **insured** means any person or organization qualifying as such under SECTION III—WHO IS AN INSURED....
>
> \* \* \*
>
> **SECTION III WHO IS AN INSURED**
>
> Brief for PAJ at 10–12.

**7.** *See* Brief for PAJ at 13–14; Brief for Insurer at 13–14; Brief for Insurer in Response to

1. If **you** are designated in the Declarations as:

 \* \* \*

c. Any organization other than a partnership or joint venture, **you** are an **insured**. **Your** executive officers and directors are **insureds,** but only with respect to their duties as **your** officers or directors. . . .

 \* \* \*

f. Any person or organization with whom **you** have agreed in writing prior to any **occurrence** or **offense** to provide insurance such as is afforded by this policy, but only with respect to operations performed by **you** or on **your** behalf, or facilities owned or used by **you.**

Umbrella Policy at 6–7 (emphasis in original). Insurer relies upon these provisions to resist Appellants' argument that the meaning of "the insured" as used in the Employers' Exclusion renders that provision ambiguous. Insurer argues that, because the definitional section identifies as an "insured" any person or organization to which Employer agreed in writing to provide insurance, the Employers' Exclusion must apply to bar coverage as to any insured when the liability stems from an injury to an employee of any other insured. Brief for Insurer at 9–12.

We do not find these definitions to be inconsistent with our reading of the severability clause, or our ruling as to its effect in tandem with the Employers' Exclusion. There is no dispute that Owners are insureds under the Umbrella Policy. However, the Umbrella Policy directs us to treat each insured as though no other insured exists. An insured who does not exist cannot employ anyone. Thus, if the person injured is not employed by the lone insured as to whom coverage is to be tested, the Employers' Exclusion simply

does not come into play. Because this analysis recognizes Owners as "insureds" under the Umbrella Policy, it does not violate any aspect of the policy's definitional section.

For the foregoing reasons, we must conclude that Owners were covered under the Umbrella Policy for the liability in question. Treated separately, as though they were the **only** insured under the terms of the policy, Owners did not employ Denovitz at any relevant time. Consequently, the Employers' Exclusion had no effect on Owners' coverage as insureds under the policy.

Before concluding, we note that our reading of the Umbrella Policy dovetails with the exclusivity of remedy for an employee under the Workers' Compensation Act. *See* 77 P.S. § 481. That provision precludes virtually all employer liability for a workplace injury beyond that provided by the Workers' Compensation Act. Thus, it is to be expected that an umbrella policy would deny coverage for workplace injuries to an insured employer relative to the insured's employees. *Cf. PMA,* 233 A.2d at 551 (noting that the named insured, as an employer, "would not intend coverage for his employee" when the employer "had already covered his employees with a workmen's compensation policy"). However, the Workers' Compensation Act does not preclude the liability of third parties. *See generally Heckendorn v. Consol. R. Corp.,* 502 Pa. 101, 465 A.2d 609 (1983). Because Owners, as lessors, foreseeably might be liable to a lessee's employee, because they do not enjoy the benefit of Workers' Compensation immunity, they had ample reason to seek to insure themselves against such liability.

The parties certainly could have fashioned the Umbrella Policy to effectuate the result for which Insurer argues. But we

must find the intent of the parties in the language of the policy read as a whole. We find the language of the policy clear to the effect that the Employers' Exclusion does not act to bar coverage to Owners, in light of the detailed language of the severability clause. Moreover, the language we find dispositive is materially distinct from that in *PMA*, and it is for that reason alone—not any misgivings about *PMA*—that we reach this result.

Order reversed. Case remanded. Jurisdiction relinquished.