ON MOTION FOR REHEARING
 

 WETHERELL, J.
 

 We withdraw our opinion issued on April 7, 2010, and substitute this opinion in its place. In light of this substituted opinion, we deny Appellee’s motion for rehearing and certification.
 

 Appellants seek review of the $850,000 final judgment entered in favor of Appel-lee. Appellants argue that the trial court erred in finding that they negligently created a “gap” in professional liability insurance coverage for Parthenon Healthcare (Parthenon). We agree, and because we reverse on this issue, we need not address the other issues raised by Appellants on appeal.
 

 In June 2001, Ralph Edenfield died after having sustained injuries while a patient at Parthenon’s skilled nursing facility. On September 17 and October 30, 2001, Appel-lee, Edenfield’s estate, notified Parthenon of its intent to initiate litigation. After receiving no response, Appellee brought a wrongful death action against Parthenon in December 2001. The case ultimately settled for $1,000,000, and as part of the settlement, Parthenon assigned to Appel-lee any claims that it had against its insurer, Lloyd’s of London (Lloyd’s), for failure to defend the claim and against Appellants, its insurance agent, for failure to procure insurance coverage.
 

 Appellants had obtained a $1,000,000 professional liability insurance policy for Parthenon through CRC, a syndicate of Lloyd’s, for the period of September 7, 2000, to September 7, 2001. The term of the policy was extended by Lloyd’s to September 15, 2001, as a result of the tragic events of September 11th, and the policy also contained a 30-day reporting period for claims after the expiration of the policy-
 

 In September and October 2001, Parthenon transmitted premium payments to Appellants and Appellants attempted to negotiate terms with CRC for a $500,000 “renewal” policy. Appellants were unable to bind coverage through CRC. Appellants thereafter obtained a $500,000 policy for Parthenon with Sapphire Blue, another syndicate of Lloyd’s, which took effect on November 1, 2001. The Sapphire Blue policy, like the original CRC policy, was a “claims-made policy” which provided cov
 
 *891
 
 erage based upon the date that the claim was submitted rather than the date on which the incident giving rise to the claim occurred.
 

 In September 2005, Appellee filed a complaint against Lloyd’s and Appellants. The complaint alleged that Lloyd’s breached its insurance contract with Parthenon by failing to defend the Edenfield claim. Alternatively, the complaint alleged that in the event that coverage under the CRC policy was properly denied, Appellants breached their fiduciary duty to Parthenon and were negligent in failing to procure insurance or in allowing the coverage to lapse. The negligent procurement case against Appellants was abated pending resolution of the coverage case against Lloyd’s.
 

 In April 2007, Appellee settled with Lloyd’s for $150,000 and dismissed the claims against Lloyd’s. The case proceeded against Appellants only. After a non-jury trial, the trial court entered final judgment against Appellants, finding that when Appellants transferred Parthenon’s insurance coverage from CRC to Sapphire Blue, they negligently created a “gap” in the coverage. The trial court found that the purchase of the Sapphire Blue policy was done in good faith, but it also found that Appellants acted in haste without fully comprehending that they were creating a “gap” in coverage and leaving Parthenon without coverage for the Edenfield claim. The trial court entered judgment for Ap-pellee in the amount of $850,000, which was based upon the $1,000,000 of coverage under the CRC policy less Appellee’s $150,000 settlement with Lloyd’s.
 

 The insurance policies at issue in this case are governed by the Surplus Lines Law, sections 626.913-626.937, Florida Statutes (2005). Section 626.9201 provides in pertinent part:
 

 (1) An insurer issuing a policy providing coverage for property, casualty, surety, or marine insurance shall give the named insured at least 45 days’ advance written notice of nonrenewal. If the policy is not to be renewed, the written notice shall state the reason or reasons as to why the policy is not to be renewed.
 

 * * *
 

 (3) If an insurer fails to provide the 45-day ... written notice required under this section, the coverage provided to the named insured shall remain in effect until 45 days after the notice is given or until the effective date of replacement coverage obtained by the named insured, whichever occurs first. The premium for coverage shall remain the same during any such extension period.
 

 These statutory requirements are clear and unambiguous. When the language of a statute is clear and unambiguous, the statute must be given its plain and obvious meaning.
 
 See Rollins v. Pizzarelli,
 
 761 So.2d 294, 298 (Fla.2000). The plain meaning construction of the statute should honor the obvious legislative intent and policy behind its enactment.
 
 See Tampa-Hillsborough County Expressway Auth. v. K.E. Morris Alignment Serv., Inc.,
 
 444 So.2d 926 (Fla.1983).
 

 Section 626.9201 is a consumer protection statute. The clear purpose and obvious intent of the statute is to give the insured adequate time to obtain coverage from another insurer before it is subjected to risk without protection as a result of the nonrenewal of its insurance.
 
 See St. Paul Fire & Marine Ins. Co. v. Valdivia,
 
 771 So.2d 1229, 1230 (Fla. 3d DCA 2000) (explaining that the purpose of the nearly-identical section 627.4133(l)(a) is to “enable an insured to obtain coverage elsewhere before the insured is subjected to risk without protection”) (quoting
 
 United States Fire Ins. Co. v. Southern Security
 
 
 *892
 

 Life Ins. Co.,
 
 710 So.2d 130, 131 (Fla. 5th DCA 1998)). The purpose of the statute would be frustrated if, as Appellee argues, the statute did not apply when the insurer intended to renew the coverage but did not do so for whatever reason because in those circumstances, the result would be the same as if renewal coverage was never
 
 offered
 
 — ie., the insured would be left without coverage.
 

 Had the Legislature intended for the provisions of section 626.9201 to not apply when the insurer intended to renew the policy, it could have easily said so as it did elsewhere in the Florida Insurance Code. For example, section 627.728 requires at least 45 days’ advance notice of nonrenewal of a motor vehicle insurance policy, but the statute expressly provides that such notice is not required “[i]f the insurer has manifested its willingness to renew” the policy. § 627.728(4)(a)l., Fla. Stat.;
 
 see also Allstate Indem. Co. v. Mohan,
 
 764 So.2d 901, 903 (Fla. 5th DCA 2000) (explaining that the provisions of section 627.728 do not apply when the insurer offers to renew the policy and the insured does not timely pay the required renewal premium in order to accept the offer). The absence of similar language in section 626.9201 supports our conclusion that the statute applies notwithstanding the insurer’s intent to renew the policy.
 
 See Sunshine Towing, Inc. v. Fonseca,
 
 933 So.2d 594 (Fla. 1st DCA 2006) (“Where the legislature has used a term in one section of a statute but omitted the term in another section, the court will not read the term into the sections where it was omitted.”).
 

 It was undisputed that Lloyd’s did not provide notice of nonrenewal of the CRC policy to Parthenon. As stated above, section 626.9201 does not require any intent by the insurer not to renew the policy; rather the statute provides that if the 45-day notice is not provided for whatever reason, then the coverage shall remain in effect. Therefore, under the clear and unambiguous terms of section 626.9201(3), coverage under the CRC policy continued until the effective date of the Sapphire Blue policy.
 

 Our plain meaning interpretation of section 626.9201 does not overlook the last sentence of subsection (3), which provides that “[t]he premium for the coverage shall remain the same during any such extension period.” This language does not condition the continuation of coverage provided by section 626.9201 upon the advance payment of an additional premium. And, in any event, this language has no bearing on Parthenon’s negligent procurement claim against Appellants. To the extent that Lloyd’s may have been entitled to offset any unpaid premium for the extension period against the coverage that it was obligated to provide Parthenon under the CRC policy by operation of section 626.9201, that issue was subsumed in the settlement of Parthenon’s coverage claim against Lloyd’s.
 

 In sum, because Parthenon was covered by the CRC policy by operation of law until the Sapphire Blue policy was obtained on November 1, 2001, the trial court erred in finding that Appellants created a “gap” in Parthenon’s insurance coverage. Accordingly, even if Appellants were negligent in not binding renewal coverage with CRC, their negligence did not result in any damages to Parthenon because it was still covered by the CRC policy until the Sapphire Blue policy took effect.
 

 For these reasons, we reverse the final judgment and remand for further proceedings.
 

 REVERSED and REMANDED.
 

 KAHN and PADOVANO, JJ., concur.