J-A03003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| GET BUSY LIVING SOLUTIONS, LLC; AND PHILADELPHIA SHOWCASE LOUNGE, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| MAIN LINE INSURANCE OFFICE, INC.; CHRISTOPHER OIDTMAN; LANDMARK AMERICAN INSURANCE COMPANY; AND USG INSURANCE SERVICES, INC. F/K/A USG INSURANCE SERVICES OF PENNSYLVANIA, INC. | |
| Appellees | No. 1103 EDA 2015 |

Appeal from the Order Entered May 22, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): February Term, 2013, No. 1822

BEFORE: GANTMAN, P.J., MUNDY, J., and DUBOW, J.

DISSENTING MEMORANDUM BY MUNDY, J.:  **FILED MAY 23, 2016**

I respectfully dissent from the Majority's decision to affirm the trial court's grant of summary judgment to Appellees in this case. Appellants request that we perform a straightforward application of 40 P.S. § 3403 to resolve the issues in this case, and I see no reason not to do so. In my view, Section 3403 was tailor-made by the General Assembly to preclude the very lapse in coverage that was allowed to occur in this case.

The Majority accurately summarizes the factual and procedural history of this case, as well as our standard of review; therefore, I need not repeat

them here. As the Majority notes, Appellants aver in their first two issues that Section 3403 required Appellees to provide coverage for the loss in this case. Appellants' Brief at 11. Section 3403 provides as follows.

**§ 3403. Notice requirements for midterm cancellations and nonrenewals**

**(a) Requirements.--**Notices of midterm cancellation and nonrenewal shall meet the following requirements:

(1) The midterm cancellation or nonrenewal notice shall be forwarded by registered or first class mail or delivered by the insurance company directly to the named insured or insureds.

(2) Written notice of nonrenewal in the manner prescribed in this section must be forwarded directly to the named insured or insureds at least 60 days in advance of the effective date of termination.

(3) Written notice of cancellation in the manner prescribed in this section must be forwarded directly to the named insured or insureds at least 60 days in advance of the effective date of termination unless one or more of the following exist:

(i) The insured has made a material misrepresentation which affects the insurability of the risk, in which case the prescribed written notice of cancellation shall be forwarded directly to the named insured at least 15 days in advance of the effective date of termination.

(ii) The insured has failed to pay a premium when due, whether the premium is payable directly to the company or its agents or indirectly under

a premium finance plan or extension of credit, in which case the prescribed written notice of cancellation shall be forwarded directly to the named insured at least 15 days in advance of the effective date of termination.

(iii) The policy was canceled by the named insured, in which case written notice of cancellation shall not be required and coverage shall be terminated on the date requested by the insured.

Nothing in this paragraph shall restrict the insurer's right to rescind an insurance policy *ab initio* upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by the company.

(4) The notice shall be clearly labeled "Notice of Cancellation" or "Notice of Nonrenewal."

(5) A midterm cancellation or nonrenewal notice shall state the specific reasons for the cancellation or nonrenewal. The reasons shall identify the condition, factor or loss experience which caused the midterm cancellation or nonrenewal. The notice shall provide sufficient information or data for the insured to correct the deficiency.

(6) A midterm cancellation or nonrenewal notice shall state that, at the insured's request, the insurer shall provide loss information to the insured for at least three years or the period of time during which the insurer has provided coverage to the insured, whichever is less. Loss information on the insured shall consist of the following:

(i) Information on closed claims, including date and description of occurrence, and amount of payments, if any.

(ii) Information on open claims, including date and description of occurrence, amount of payment, if any, and amount of reserves, if any.

(iii) Information on notices of occurrence, including date and description of occurrence and amount of reserves, if any.

(7) The insured's written request for loss information must be made within ten days of the insured's receipt of the midterm cancellation or nonrenewal notice. The insurer shall have 30 days from the date of receipt of the insured's written request to provide the requested information.

**(b) Effective notice.--**Until an insurer issues a nonrenewal or cancellation notice that complies with the provisions set forth in this act, insurance coverage will remain in effect. However, if the insured obtains replacement coverage, the noncomplying insurer's obligation to continue coverage ceases.

40 P.S. § 3403.[1]

Appellants correctly conclude that the plain text of Section 3403's subsections reveal four general ways commercial property and casualty

---

[1] The parties do not dispute that the insurance policy in this case is a policy covering commercial property and casualty risks that is governed by Chapter 14 of Title 40. **See generally** 40 P.S. § 3407(a) (stating, "this act applies to insurance policies, exclusive of reinsurance policies, covering commercial property and casualty risks located in this Commonwealth[]").

coverage terminates in this Commonwealth. ***See generally*** Appellants' Brief at 14-15. First, the insurance company sends out a compliant notice of midterm cancellation. ***See generally*** 40 P.S. § 3403(a)(1). Second, the insurance company sends out a compliant notice that the subject policy will not be renewed at its term's end. ***See generally id.*** § 3403(a)(2). Third, the insured opts to cancel coverage of his or her own choosing. ***See generally id.*** § 3403(a)(3)(iii) (stating, "[if t]he policy [is] canceled by the named insured … written notice of cancellation shall not be required and coverage shall be terminated on the date requested by the insured[]"). Fourth, the insurance company does not comply with the notice requirements of subsection (a), but the insured obtains replacement coverage. ***See generally id.*** § 3403(b) (stating, "if the insured obtains replacement coverage, the noncomplying insurer's obligation to continue coverage ceases[]"). Therefore, when all of Section 3403's subsections are read together, it reveals an intent by the General Assembly to require commercial property and casualty insurance policies to automatically renew, "until" one of the four events identified in the Act occurs.[2] ***Id.***

---

[2] The policy contains nonrenewal language similar to the statute.

> 1.　Nonrenewal
>
> If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to

*(Footnote Continued Next Page)*

Appellants' logical reading of the statute is most heavily reinforced by subsection (b), which plainly states that, "[u]ntil an insurer issues a nonrenewal or cancellation notice that complies with the provisions set forth in this act, **insurance coverage will remain in effect**." *Id.* § 3403(b) (emphasis added). Appellees freely concede throughout their brief that Appellants' policy was neither cancelled nor nonrenewed.[3] *See* Appellees' Brief at 8, 10 (stating unequivocally in bold print, "Landmark Did Not Attempt to Cancel the Policy Midterm" and "Landmark … Never Sought to Nonrenew the Policy[]"). There is also no dispute that Appellants did not cancel the policy, nor did they obtain replacement coverage. It is therefore quite clear that, because Appellees admit that they did not "issue[] a nonrenewal or cancellation notice that complies with the provisions set forth in [Section 3403,]" "insurance coverage … remain[ed] in effect." 40 P.S. §

*(Footnote Continued)* ————————

> the first Named Insured at least 60 days before
> the expiration date of the policy.

Appellants' Motion for Summary Judgment, 2/4/14, Exhibit A.1, at 50.

[3] Although not specifically argued by Appellants, I note the November 28, 2012 renewal letter cannot be considered a proper nonrenewal notice because it did not comply with Section 3403 or the terms of the policy. It did not comply with Section 3403 because it was not labeled as a "notice of nonrenewal," it did not list the specific reasons for nonrenewal, and it was sent less than 60 days before the policy supposedly lapsed on December 24, 2012. Further, the November 28, 2012 renewal letter does not qualify as a valid notice of nonrenewal under the terms of the policy for the same reasons. Accordingly, the policy automatically renewed because the insurer did not issue a nonrenewal notice, as Appellees admit.

3403(b). In my view, subsection (b) says what it means and means what it says. Leaving aside actions by the insured, if an insurance company issues a compliant Section 3403(a) notice, coverage terminates on the appropriate date, if there is no such notice "coverage will remain in effect." ***Id.***

However, Appellees aver that "[b]ecause Landmark neither cancelled nor nonrenewed the Policy, it was not required to send out a notice of cancellation or nonrenewal pursuant to [Section] 3403." Appellees' Brief at 14. The Majority agrees, stating "[t]he plain language of Section 3403 bars Appellants' assertion that this notice provision applies to situations other than midterm cancellations or policy nonrenewals." Majority Memorandum at 8. Respectfully, in my view, the Majority's conclusion is unsound for several reasons.

First, as described above, the General Assembly has determined that there are only four ways for coverage to terminate, which the Majority does not appear to generally dispute. By accepting Appellees' reading of Section 3403, however, the Majority has **added** a fifth avenue for terminating coverage not sanctioned by the statute, *i.e.*, the insured's failure to respond to a renewal offer. I cannot agree that Section 3403 permits policies to

lapse or expire without notice, as it is precluded by the plain text of Section 3403(b).[4]

The Majority concludes, "Appellants' Policy lapsed on December 24, 2012, at 12:01 a.m., as that was the date and time upon which it expired." Majority Memorandum at 9. However, under Section 3403 coverage cannot lapse or expire. Instead, it automatically renews until the insurer issues a notice of cancellation or nonrenewal. Because the insurer admits it did not issue a nonrenewal notice, the policy could not lapse. The Majority's conclusion appears to be premised on a supposed distinction between lapse and nonrenewal. *See id.* In my respectful view, that is a false premise. There is no other situation recognized by Section 3403 besides a policy being canceled or nonrenewed by the parties. Stated another way, when a policy has lapsed it has *ipso facto* been nonrenewed.[5]

---

[4] I note that if at the time of automatic renewal the insured failed to pay the next premium that was due, Section 3403(a)(3)(ii) shortens the notice period from 60 days to 15 days. *See generally* 40 P.S. § 3403(a)(3)(ii). However, as the loss in this case occurred approximately 13 hours after the policy automatically renewed, this provision does not apply.

[5] This is consistent with the regulations promulgated by the Pennsylvania Insurance Department for this chapter of Title 40. The regulations define nonrenewal in relevant part as "[t]he failure by an insurer to issue and deliver a policy superseding at the end of the policy period one previously issued and delivered by the same insurer or affiliated insurer, where the renewal policy provides types and limits of coverage substantially equivalent to those contained in the policy being superseded." 31 Pa. Code § 113.81. Important to the instant case, the definition says nonrenewal "also includes the failure to issue and deliver a certificate or notice extending the term of a

*(Footnote Continued Next Page)*

Second, Appellees' interpretation of Section 3403 results in burden shifting. Because Section 3403 requires automatic renewals absent notice, the onus is generally on the insurance company to terminate coverage by affirmatively complying with the notice requirement of subsection (a). Appellees' construction of Section 3403, which the Majority adopts, shifts the obligation from the insurer, normally required to send notice in order to end coverage, to the insured, by requiring it engage in an affirmative act in order to continue coverage.[6] That is to say, to effectuate continued coverage, the

*(Footnote Continued)* _____

policy beyond its policy period or term with types and limits of coverage substantially equivalent to those contained in the policy being extended." *Id.*

[6] Appellants point out that other states have such burden shifting provisions in their respective statutes. As the Court of Appeals of Georgia pointed out, under Georgia law, "a policy will be automatically renewed unless a written notice of nonrenewal is timely mailed or unless, in place of the nonrenewal notice, **the insurer communicates to the insured that the insurer intends to renew the policy**." *Prudential Prop. & Cas. Ins. Co. v. Pritchett*, 313 S.E.2d 706, 708 (Ga. Ct. App. 1983) (emphasis added); *see also* Ga. Code Ann. § 33-24-55(f)(3) (West 2015) (stating that automatic renewal shall not occur if "[t]he insurer [has] manifested its willingness to renew by delivering a renewal policy, renewal certificate, or other evidence of renewal to the named insured or his representative or by offering to issue a renewal policy, certificate, or other evidence of renewal or having manifested such intention by any other means[]"). Of course, conclusions of Georgia law are not binding on this Court, but I point this out to illustrate that legislatures are fully capable of adding such a renewal notice provision into Section 3403. Importantly, our General Assembly has seen fit not to engage in such burden shifting that the Majority now permits, notwithstanding that other states, like Georgia, have opted to do so. *See generally Shore v. Coronet Ins. Co.*, 288 N.E.2d 887, 889 (Ill. App. Ct. 1972); *Ray v. Associated Indem. Corp.*, 373 So. 2d 166, 168 (La. 1979); *Yovish v. U.S. Auto. Assoc.*, 794 P.2d 682, 684 (Mont. 1990);
*(Footnote Continued Next Page)*

insured must now affirmatively contact the insurance company and agree for the same coverage to continue at the same premium.[7]  It is axiomatic that Pennsylvania law generally construes insurance law and insurance policies in favor of the insured, in favor of coverage, and against the insurance company.  *See generally Mut. Benefit Ins. Co. v. Politopoulos*, 75 A.3d 528, 531 (Pa. Super. 2013), *affirmed on other grounds*, 115 A.3d 844 (Pa. 2015); *Adamitis v. Erie Ins. Exch.*, 54 A.3d 371, 380 (Pa. Super. 2012). In my view, the case *sub judice* provides no compelling reason to depart from this generally accepted policy.[8]

*(Footnote Continued)* ――――――――――

*Nationwide Mut. Ins. Co. v. Davis*, 171 S.E.2d 601, 604 (N.C. Ct. App. 1970).

[7] To the extent the trial court justifies this interpretation as consistent with the common law, I note that Section 3403 **displaces** the common law.  *See generally* 40 P.S. § 25 (stating, "[t]he provisions of this act, so far as they are the same as those of existing laws, shall be construed as a continuation of such laws and not as new enactments[]"); 1 Pa.C.S.A. § 1504 (stating, "[i]n all cases where a remedy is provided or a duty is enjoined or anything is directed to be done by any statute, the directions of the statute shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the common law, in such cases, further than shall be necessary for carrying such statute into effect[]").

[8] In contrast to Georgia law, prior to 2012, Florida law, like Pennsylvania, did not have such a burden-shifting provision in its statutes.  In *Brown & Brown, Inc. v. Estate of Edenfield*, 36 So. 3d 889 (Fla. Dist. Ct. App. 2010), the District Court of Appeal of Florida noted that the obvious purpose of these automatic renewal statutes was "to give the insured adequate time to obtain coverage from another insurer before it is subjected to risk without protection as a result of the nonrenewal of its insurance."  *Id.* at 891.  The Court of Appeal rejected the very argument advanced by Appellees here that the Majority adopts, stating "[t]he purpose of the statute would be
*(Footnote Continued Next Page)*

- 10 -

Third, Appellees' argument eliminates the nonrenewal notice requirement from the statute's text. Under Appellees' view of Section 3403, an insurance company is allowed to simply offer to renew the policy on the same terms and premium, and the policy lapses if the insured does not reply irrespective of whether a Section 3403 nonrenewal was sent. As the Court of Appeals of Wisconsin stated, "[i]f the insured must indicate a desire to renew regardless of whether notice is given, then the **mandatory** notice provision is converted into an **optional** procedure that the insurer can

*(Footnote Continued)* _____

frustrated if, as Appellee argues, the statute did not apply when the insurer intended to renew the coverage but did not do so for whatever reason because in those circumstances, the result would be the same as if renewal coverage was never offered—*i.e.,* the insured would be left without coverage." ***Id.*** at 892.

The Court of Appeal further noted that "[h]ad the Legislature intended for the provisions of [the statute] to not apply when the insurer intended to renew the policy, it could have easily said so as it did elsewhere in the Florida Insurance Code." ***Id.*** Other states have adopted this view. ***See generally Nat'l Auto. & Cas. Ins. Co. v. Cal. Cas. Ins. Co.***, 188 Cal. Rptr. 670, 672 (Cal. Ct. App. 1983); ***Barbara Corp. v. Bob Maneely Ins. Agency***, 484 A.2d 1291, 1293-1294 (N.J. Super. Ct. App. Div. 1984); ***Trinity Universal Ins. Co. v. Burnette***, 560 S.W.2d 440, 442 (Tex. Ct. Civ. App. 1977); ***Sausen v. Am. Family Mut. Ins. Co.***, 360 N.W.2d 565, 566 (Wis. Ct. App. 1984).

Ironically, Appellees point out that in 2012, the Florida legislature subsequently adopted the renewal notice provision suggested by the District Court of Appeal. Fla. Stat. Ann. § 692.9201 (West 2012). It is unclear how this supports Appellees' reading of Section 3403, which does **not** have this renewal notice provision, as Florida and other states have adopted. If anything, Florida's amendment statutorily adopting Appellees' view only **undermines** their position, since it illustrates that legislatures are fully capable of making such amendments if desired.

disregard without risk." ***Sausen***, ***supra*** (emphases added). Under the Majority's reading, an insurance company may permit a commercial property and casualty policy to lapse without complying with Section 3403's provisions, rendering its nonrenewal notice requirement meaningless.

The General Assembly enacted Section 3403 to preclude lapses without notice in commercial property and casualty coverage, not to perpetuate them. The plain language of the statute is clear, and a straightforward application of said language is all that is required in this case.[9] Since Appellees freely concede they did not comply with the condition the legislature requires to terminate coverage, coverage could not terminate. The Majority's contrary reading of Section 3403 strips the statute of its very purpose, and turns the General Assembly's mandate upside-down. Accordingly, I would reverse the trial court's May 22, 2014 order and

_____

[9] In their third issue, Appellants advance the same reading of the insurance policy that, "unless the insurer takes action to cancel or notify of a decision to not renew, the default and automatic consequence is renewal." Appellants' Brief at 29. Similar to Section 3403, under the policy by its own terms, coverage cannot lapse or expire. Because the insurer admits it did not issue a nonrenewal notice, the policy could not lapse. This is especially true since Appellees cannot sell an insurance policy that contradicts the General Assembly's requirements. ***See*** 40 P.S. § 26 (stating, "[i]t shall be unlawful for any … company … to negotiate or solicit … any contract of insurance, or to effect the same, or to receive and transmit any offer or offers of insurance, or receive or deliver a policy or policies of insurance, or in any manner to aid in the transaction of the business of insurance, without fully complying with the provisions of this act[]").

- 12 -

remand with instructions to grant Appellants' motion for partial summary judgment and for further proceedings.  Respectfully, I dissent.